Carlos Elias VALENCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–99–00645–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 14, 2001.

Joe Roach, Houston, for Appellant.

Bridget Holloway, John B. Holmes, Houston, for State.

Panel consists of Chief Justice SCHNEIDER, and Justices TAFT and BRISTER.

## OPINION

BRISTER, Justice.

Carlos Elias Valencia, the appellant, pleaded not guilty to the offense of possession with the intent to deliver more than 400 grams of cocaine. After finding appellant guilty as charged, the jury assessed punishment at 99 years confinement and a $250,000.00 fine. We affirm.

A task force consisting of agents from the Federal Bureau of Investigation, the Drug Enforcement Agency (DEA), the Houston Police Department (HPD), and the United States Customs Service conducted surveillance on a Houston apartment complex known for a high level of narcotics activity. While stationed in the apartment's parking lot, DEA Special Agent Lee saw two cars drive into the parking lot, a black car driven by appellant and a maroon car driven by Edison Celorio. The two parked their cars approximately five spaces apart, remained for 30 seconds, then both backed out and parked

again about 40 feet away in adjacent spaces. This caught Agent Lee's attention because both cars were moving in tandem and there was no apparent reason to park twice.

After reparking, Celorio got out of his car, walked to the back of appellant's car, opened the hatchback, and removed a black leather bag. Celorio transferred the bag to the trunk of his car and drove out of the parking lot. There was no conversation between appellant and Celorio; appellant remained silently in his car during the transfer. Agent Lee believed this was a transfer of drugs because it was done very quickly, without conversation, and the two men split up immediately thereafter.

HPD Officer Tomlinson and other members of the task force followed Celorio's car as it left the apartment complex. They lost sight of Celorio briefly after he made a sudden U-turn, which made it impossible for the officers to continue following Celorio without alerting him to their presence. About 15 minutes later, other agents located and stopped Celorio as his car pulled out of a different apartment complex. When Officer Tomlinson approached the car, a female passenger who had not previously been in the car blurted out, "I told him not to do it." She was later identified as Demetrece Joseph, Celorio's wife. A search of the car revealed that the black leather bag was gone.

Joseph signed a consent for the search of her apartment. Though she and Celorio were married, the apartment was leased in Joseph's name only. Once in the apartment, Joseph told Officer Tomlinson that the black leather bag could be found in the closet, and that it contained drugs. Officer Tomlinson found the bag, which proved to contain cocaine bricks weighing over eight kilograms (8,000 grams). No fingerprints were found on the bag or the bricks of cocaine. Joseph also directed the offi-cers to scales and other tools for repackaging cocaine that were located in the apartment.

Meanwhile, appellant returned his car to its initial parking space after his encounter with Celerio. He entered apartment 142 (which the task force had under specific surveillance) and left about five minutes later, carrying nothing on either occasion. He then drove from the apartment complex, made two brief stops, and a third stop at a grocery store.

As appellant was leaving the grocery store, five members of the task force approached him and informed him they were conducting a narcotics investigation. When they asked appellant where he had been, he mentioned each stop they had seen him make, except for the stop at the apartment complex where the transfer occurred. When asked for his driver's license, appellant provided a license containing his picture and the name "Sergio Guerrero." Upon learning that cocaine had been found in Joseph's apartment, the officers arrested appellant. A search of appellant and his car found no weapons, narcotics, or drug paraphernalia.

At trial, Special Agent Lee identified the black leather bag found in Joseph's apartment as the one he had seen Celerio transfer from appellant's car. Joseph testified that appellant brought cocaine to her husband at their apartment on several occasions in the month before his arrest. The day before the cocaine was seized, she said appellant had picked up the black leather bag containing "a lot" of money from her apartment.

### The Accomplice Witness Instruction

In point of error three, appellant maintains the trial court erred in refusing to instruct the jury that Demetrece Joseph was an accomplice witness as a matter of law. The trial court did instruct the jury to find whether Joseph was an accomplice witness as a matter of fact, and to consider

her testimony only if they decided she was not an accomplice, or if her testimony was corroborated.

Before Joseph testified at trial, defense counsel requested a hearing outside the presence of the jury to establish whether she was an accomplice witness. During the hearing, Joseph admitted knowing that her husband (Celerio) sold drugs for a living and had been doing so for over a year. Although she was present when the drug exchanges took place in her apartment, she said she objected to them but was unable to stop her husband from continuing. Joseph testified that she was unemployed and relied on Celerio for financial support.

■ An accomplice is one who participates before, during, or after the commission of a crime, and who can be prosecuted for the same offense as the defendant or for a lesser-included offense. *Medina v. State*, 7 S.W.3d 633, 641 (Tex.Crim.App. 1999). Mere presence during the commission of a crime coupled with participation in concealing the crime is not enough. *Id.*

■ If a witness is an accomplice as a matter of law, the trial court must so charge the jury. *Ashford v. State*, 833 S.W.2d 660, 664 (Tex.App.—Houston [1st Dist.] 1992, no pet.). Conversely, if the witness is not an accomplice as a matter of law, no instruction is necessary. *Id.* If there is a question of fact as to the witness's status, the court should instruct the jury to decide the question. *Id.*

■ In this case, Joseph acknowledged that her husband trafficked in narcotics from their apartment. But the evidence did not establish as a matter of law that she participated in her husband's activities, or exercised actual possession and control of the contraband. *See Douglas v. State*, 794 S.W.2d 98, 102 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd) (possession requires proof of both knowledge and con-

trol). While the evidence might support a conviction for possession, it might also support a finding that she was a bystander to her husband's crimes. The trial court properly instructed the jury to determine whether Joseph was an accomplice as a matter of fact.

■ Even if Joseph was an accomplice as a matter of law, the court's failure to give the proper accomplice instruction is not reversible error because there was corroborative evidence. *Solis v. State*, 792 S.W.2d 95, 97 (Tex.Crim.App.1990). A defendant may not be convicted upon the testimony of an accomplice unless that testimony is corroborated by other evidence that tends to connect the defendant to the offense. TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979). The nonaccomplice evidence need not establish guilt beyond a reasonable doubt, or even directly link the defendant to the commission of the offense; the evidence need only tend to connect the defendant to the offense. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim.App.1997).

■ In deciding whether the nonaccomplice evidence connects the defendant to the crime, each case must be considered on its own facts. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim.App.1993). Proof that a defendant was present at the scene of a crime, coupled with other suspicious circumstances, may tend to connect the defendant to the commission of the offense. *Cruz v. State*, 690 S.W.2d 246, 250–51 (Tex.Crim.App.1985). Evidence that connects a defendant to a weapon used in the offense, and evidence of flight and guilty demeanor, also tends to connect a defendant with the crime. *Hernandez*, 939 S.W.2d at 178.

In this case, testimony from the task force agents tied the black leather bag containing the cocaine to appellant's possession less than an hour before its discovery. Their testimony regarding the

suspicious parking *pas de deux* and the hatchback-to-trunk transfer tended to confirm that appellant was involved in something other than an innocent exchange of luggage. Thus, even if Joseph was an accomplice, there was sufficient nonaccomplice testimony to tend to connect appellant to the crime alleged.

We overrule point of error three.

### Sufficiency of the Evidence

In points of error one and two, appellant challenges both the legal and factual sufficiency of the evidence to support his conviction. In reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict, and ask whether a rational trier-of-fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In reviewing factual sufficiency, we examine all of the evidence neutrally and ask whether proof of guilt is so obviously weak or greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *King v. State*, 29 S.W.3d 556, 563 (Tex.Crim.App. 2000).

To establish unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant exercised care, custody, control, and management over the substance knowing it was contraband. Tex.Health & Safety Code Ann. § 481.002(38), .112(a) (Vernon Supp.2001); *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). The State may prove knowing possession by presenting evidence that affirmatively links the defendant to the controlled substance. *Brown v. State*, 911 S.W.2d 744, 748 (Tex.Crim.App.1995); *Harmond v. State*, 960 S.W.2d 404, 406 (Tex.App.— Houston [1st Dist.] 1998, no pet.)

In this case, there was no direct evidence establishing who put the cocaine in the black leather bag, or when it was done.

In *Hurtado v. State*, this Court found the following circumstantial evidence established sufficient affirmative links: (1) the defendant was the driver and sole occupant of a car containing the contraband; (2) the contraband was immediately accessible to him under the adjacent passenger seat; (3) the large quantity of contraband made it unlikely that its presence was accidental; and (4) the defendant appeared nervous and glanced frequently toward the location of the contraband. 881 S.W.2d 738, 743 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

In this case, there was the following circumstantial evidence: (1) the cocaine was found in a bag recently removed from appellant's car; (2) the bag had been immediately accessible to him in the hatchback; (3) appellant had picked up the bag and a large sum of money from Celorio the day before; (4) the large quantity of cocaine involved made it unlikely that its presence was accidental; (5) appellant's suspicious driving behavior indicated something other than an innocent exchange of luggage; and (6), when questioned, appellant provided a false driver's license and an incomplete report of his whereabouts. We conclude that the verdict is supported by legally as well as factually sufficient evidence.

We overrule points of error one and two.

### Lesser–Included Offense

In point of error four, appellant argues that the trial court erred in refusing to instruct the jury on the lesser-included offense of possession of a controlled substance. *See* Tex.Health & Safety Code Ann. § 481.115 (Vernon Supp. 2001). In *Upchurch v. State*, this Court held that an instruction on the lesser-included offense of possession must be included in the charge if there is any evidence that the defendant did not intend to deliver drugs found in the trunk of his car. 23 S.W.3d 536, 538 (Tex.App.—Houston

[1st Dist.] 2000, pet. ref'd). In that case, the instruction was required when 100 grams of cocaine were found in the defendant's trunk, but he testified at trial that he had decided to leave the narcotics trade shortly before his arrest. In this case, by contrast, the amount of cocaine involved was 80 times greater, worth more than $200,000, and appellant did not testify or present any witnesses in his defense. Once the jurors chose to believe that appellant possessed this quantity of cocaine, there is no rational basis in the record for them to believe that he possessed it for any reason other than sale. We conclude that the trial court did not err in refusing to give the lesser-included offense instruction.

We overrule point of error four.

### Voir Dire

In point of error five, appellant argues that the trial court erred in failing to strike potential juror number two for cause. Appellant asserts this potential juror could not consider the minimum punishment provided by law. *See* Tex.Health & Safety Code Ann. § 481.112(f) (Vernon Supp.2001) (possession with intent to deliver more than 400 grams punishable by term of 15 to 99 years and fine not to exceed $250,000).

 Quizzing potential jurors about the range of punishment consumed a substantial part of this trial, as it does in many criminal cases. Fully one-quarter of the voir dire record dealt solely with the range of punishment, and the voir dire portion of the reporter's record is almost twice as long as all the evidence concerning guilt and punishment combined. One hundred and twenty citizens had to be called to seat 12 jurors because the first 60 had difficulties with range-of-punishment issues.[1]

 During voir dire, potential juror number two at first stated he could not consider the minimum punishment of 15 years. Shortly thereafter, the trial judge interrupted and gave the following explanation:

[The Court]: Well, let me intercede here again. You know, I don't know what an appropriate case is for a juror. I know what I think an appropriate case is when I try the case and I don't have a jury. If I had a 17–year–old who had never been in any trouble and somebody gave him $5,000 to carry some drugs across the street and he knew it was cocaine, I night [sic] consider giving him the minimum punishment. On the other hand, if it was different circumstances and the person had a long record and that sort of thing, I might consider giving them life in the person [sic]. So there are all sorts of circumstances that can apply. And all you have to do is be able to consider the full range of punishment. It's not pertaining to this case, but that's just the general law. Any case you can

---

1. Texas law prohibits service by jurors who are biased against a law applicable to the case. Tex.Code Crim.Proc.Ann. art. 35.16(b)(3), (c)(2) (Vernon Supp.2001). Courts have interpreted this to exclude a person from serving on the jury if that person cannot imagine situations in which the minimum and the maximum penalties would be appropriate. *Johnson v. State*, 982 S.W.2d 403, 405 (Tex.Crim.App.1998). As a result, much valuable trial time is spent on detailed explanations and far-fetched hypotheticals to see if potential jurors can conceive of extreme punishments in extreme situations, none of which relate to the case actually being tried.

Potential jurors who disagree with the punishment range provided by the Legislature, and will allow that opinion to affect their verdict, should be excluded. But it is not entirely clear why citizens who agree to follow the law and assess punishment *somewhere* within the range prescribed by the Legislature are biased against the law merely because they cannot agree to assess punishment *everywhere* within that range.

think of, if you would consider the minimum; any case you can think of, if you would consider the maximum. That's the law that applies, not with regard to this fact here.

After this explanation, potential juror number two amended his response during individual questioning in the judge's chambers:

[Defense counsel]: If you can consider it in an appropriate case as little as 15 years in the case where someone had been convicted of a possession of cocaine with intent to deliver a minimum of 400 grams.

[Juror number two]: Well, based on— my second answer is based on two things. One, as a general question on the street out here I would have to say, yes, I could consider it. But having come into the court and realizing this is not a 17–year–old I can—I can't really consider that. If that—if you understand where I'm coming from. You cleared it up if you had asked that question.

[The Court]: You can consider it according to the facts.

[Juror number two]: Yes, sir.

[The Court]: You can think of some instances where you would do it?

[Juror number two]: Of course. You know, based on the question the way you clarified it I can answer, yes, I could.

This exchange contradicts appellant's argument. Juror number two expressed doubt about his ability to assess the minimum punishment, but only in this particular case because of appellant's maturity. A potential juror is not required to commit to the full range of punishment under the particular facts of the case. *Sadler v. State*, 977 S.W.2d 140, 143 (Tex.Crim.App. 1998). The potential juror need only agree that the minimum punishment would be appropriate in some circumstances and the maximum punishment in others. *Johnson v. State*, 982 S.W.2d 403, 406 (Tex.Crim. App.1998). Juror number two was not biased simply because he needed some help in imagining a scenario in which the minimum punishment would be appropriate. *Ladd v. State*, 3 S.W.3d 547, 559 (Tex.Crim.App.1999). We conclude that the trial court did not err in failing to strike juror number two for cause.

We overrule point of error five.

### Conclusion

We affirm the trial court's judgment.