Date issued November 14, 2002












     




In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00730-CR




BRANDON ODOM, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 12th District Court
Walker County, Texas
Trial Court Cause No. 20,689




 
 
 
O P I N I O N
          Brandon Lee Odom, appellant, was convicted of murder,


 and the jury assessed
punishment at 40 years’ confinement. In one point of error, appellant argues that the
evidence was factually insufficient to sustain his conviction. We affirm.
Facts
          On June 4, 1999, Micha Johnson disappeared. His remains were found on May
6, 2000. Johnson died from two gunshot wounds, one to the head and the other to the
back.
          Appellant confessed to the murder. His written statement delineated the
following course of events. On the morning of June 4, 1999, at approximately 7:30
a.m., appellant stopped by Rodna Marr’s and Joey Gray’s home, where he spoke with
Johnson. Johnson suggested they “go riding and talk.” After driving for a while,
Johnson asked appellant to stop. Appellant stopped at the gate to his family’s deer
lease. Appellant and Johnson talked for a while longer. Then Johnson stated he
wanted to begin dating Stevie Odom, appellant’s girlfriend, now appellant’s wife. 
Appellant hit Johnson, and Johnson pulled a pistol. Appellant grabbed Johnson’s
arm, and they wrestled on the ground. The gun went off. Appellant and Johnson both
had blood on them. Appellant picked up the gun and shot Johnson. Appellant left
the deer lease, cleaned himself up, and went to work. Appellant later took a shovel,
dug a hole at the deer lease, and buried Johnson’s body. Later that week, appellant
used a backhoe to dig a deeper hole, where he re-buried Johnson’s body. 
          At trial, appellant denied committing the offense. Appellant testified that he
spent the night of June 3, 1999, and early morning hours of June 4, 1999, with Kelly
Beckworth, Alicia Davis, and Kelly Beckworth’s cousin. Appellant, Beckworth,
Davis, and Beckworth’s cousin left a local bar at approximately 2:00 a.m. and drove
to the sand pits, a local hang-out, in Beckworth’s truck. Davis left her car parked at
a local church. Appellant had borrowed Randall Ellis’s truck and left it parked on the
side of the road. The group stayed at the sand pits until approximately sunrise. 
Beckworth dropped Davis off at her car and dropped appellant off at Randall Ellis’s
truck. Appellant then drove to Randall Ellis’s home, where no one was awake. 
Appellant left the house and drove to his uncle Sam Ellis’s home to see if his uncle’s
shop was open. The sun had risen by this time. Appellant returned to Randall Ellis’s
home to take him to work. The two men left the house and drove to Sam Ellis’s,
where they retrieved the keys to open the shop. Appellant denied seeing or talking
to Johnson on June 4, 1999. Appellant presented the alibi testimony of Davis,
Randall Ellis, and Sam Ellis.
          The State produced at least four witnesses who corroborated appellant’s prior
written statement, in which appellant confessed to killing Johnson. Gregory
Schanfish testified that, in December, 1999, appellant said he took Johnson to his
father’s deer lease and got into an argument. Appellant shot Johnson once, and
Johnson stumbled into a ditch where appellant shot him a second time with Randall
Ellis’s .22 magnum pistol. Schanfish further testified that appellant poured lime over
Johnson’s body and used a backhoe to bury it.
          Bobby Puckett testified to appellant’s demeanor as they drove home from work
on May 5, 2000, and to a conversation they had while driving. Puckett testified that
appellant was visibly upset and crying. Appellant explained to Puckett that he was
possibly going to jail for murder. Appellant admitted to Puckett that “he did do it.”


 
          Stevie Odom, appellant’s wife, testified that appellant told her on May 5, 2000,
after returning from work, that he had murdered Johnson. She further testified that
when he arrived home from work that evening, after being dropped off by Puckett,
appellant was crying. Appellant told Stevie that he had told Schanfish where the
body was buried and that Schanfish had told the Texas Rangers. Stevie further
testified that appellant had told his mother, in August, 1999, that he had committed
the murder and where the body was buried.
          Robert Odom, appellant’s father, testified that, on May 7, 2000, he asked
appellant whether appellant knew anything about Johnson’s disappearance. 
Appellant told Robert that he did know something. Appellant was questioned at the
Walker County Sheriff’s Department and was allowed to leave. Robert told appellant
to write down everything he knew about the disappearance. Some time later,
appellant and Robert returned to the Sheriff’s Department with the written statement
in which appellant confessed to killing Johnson. At the time that appellant gave the
statement to the authorities, Robert believed appellant. 
           Some of appellant’s admissions were corroborated by Dr. Harold Gillking, a
forensic anthropoligist. Gillking testified that Johnson was shot twice with a .22
caliber bullet at close range. Dr. Gillking testified that lime was found on the
remains. 
          Appellant’s admissions were further corroborated by other testimony and
evidence. Randall Ellis confirmed that he owned a Savage .22 magnum firearm and
that it was in his truck, which appellant was using on June 3 and 4, 1999. Johnson’s
remains were found on appellant’s family’s deer lease. Appellant had rented a
backhoe on June 11 and 12, 1999. The bucket teeth of the backhoe rented by
appellant matched the ruts made by the backhoe used to dig the hole where Johnson’s
body was found. There were two holes found at the deer lease, further corroborating
appellant’s statement. The first, shallower hole contained the top of Johnson’s skull. 
The second, deeper hole, which showed the ruts made by the backhoe bucket,
contained the rest of Johnson’s remains. 
Sufficiency of the Evidence
          In his only point of error, appellant argues that the evidence was factually
insufficient to sustain his conviction for murder.
          In reviewing factual sufficiency, we examine all of the evidence neutrally and
ask whether proof of guilt is so obviously weak or greatly outweighed by contrary
proof as to indicate that a manifest injustice has occurred. King v. State, 29 S.W.3d
556, 563 (Tex. Crim. App. 2000); Valencia v. State, 51 S.W.3d 418, 423 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). The jury as trier of fact is the sole judge
of the credibility of the witnesses and the weight to be given the testimony. See Jones
v. State, 944 S.W.2d 642, 648-49 (Tex. Crim. App. 1996); Henderson v. State, 29
S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d). The jury may
accept or reject all or any part of any witness’s testimony. We may disagree with the
jury’s determination, even if probative evidence supports the verdict, but we must
avoid substituting our judgment for that of the fact finder. King, 29 S.W.3d at 563. 

          In this case, appellant argues, first, that the evidence was factually insufficient
to overcome his denial of any knowledge of the crime in his testimony at trial, his
testimony before the grand jury in August, 1999, and his first statement to the police
on May 7, 2000. However, appellant’s own written statement that he had killed
Johnson, how he killed Johnson, and where he had buried Johnson’s body was read
into evidence. The written statement was corroborated by evidence found at the
grave and by the testimony of Schanfish, Puckett, Stevie Odom, and Robert Odom. 
The jury was free to disbelieve appellant’s testimony at trial and to credit the
testimony of Schanfish, Puckett, Stevie Odom, and Robert Odom, as well as
appellant’s own prior written statement.
          Second, appellant argues that no physical evidence linked him to the
disappearance or murder of Johnson. Appellant argues that the bullet found at the
deer lease was never matched forensically to the .22 magnum firearm that was
introduced into evidence, that the evidence that the backhoe that appellant rented was
used to dig the grave was mere speculation because the tracks discovered on the deer
lease could not be identified as having been made specifically by the backhoe, and
that the first indication that appellant had committed the crime was the statement by
Schanfish that appellant had pointed out a spot on the deer lease where Johnson was
buried and had admitted that he had shot Johnson.Direct evidence directly demonstrates the ultimate fact to be proven, whereas
circumstantial evidence is direct proof of a secondary fact which, by logical
inference, demonstrates the ultimate fact to be proven. Taylor v. State, 684 S.W.2d
682, 684 (Tex. Crim. App. 1984). If the accused admits or confesses killing the
deceased, proof of the admission or confession is direct evidence of the main
inculpatory fact. Barefoot v. State, 596 S.W.2d 875, 880 (Tex. Crim. App. 1980). 
Circumstantial evidence often has equal or even greater probative value than direct
evidence. See Goodman v. State, 66 S.W.3d 283, 296 (Tex. Crim. App. 2001).
          The State introduced the following direct evidence of appellant’s guilt: (1)
appellant’s written statement; (2) Schanfish’s testimony recounting the same events
as in appellant’s statement; (3) Stevie Odom’s testimony that appellant had told her
he had admitted to his mother that he murdered Johnson; and (4) Puckett’s and Stevie
Odom’s testimony that appellant said he “had [done] it” and that appellant was visibly
upset when he returned home from work on May 5, 2000. The State introduced the
following circumstantial evidence of appellant’s guilt: (1) Dr. Gillking’s testimony
that Johnson was shot twice with .22 caliber bullets; (2) a receipt for a backhoe rented
by appellant; (3) the match between the bucket teeth on the backhoe and the ruts
found at the grave site; and (4) the location of Johnson’s remains in two different
holes on appellant’s family’s deer lease. This evidence corroborated the details of
appellant’s confession. We find that the direct and circumstantial evidence presented
is factually sufficient to support the verdict.
          Third, appellant argues that Schanfish was not a credible witness. The fact
finder is the sole judge of the credibility of the witnesses and of the weight
attributable to the testimony of those witnesses. See Henderson, 29 S.W.3d at 623;
see also Jones, 944 S.W.2d at 648-49. The jury heard testimony from Douglas
Hunter Smith that Schanfish had told Smith that he had killed Johnson because
Johnson was a “snitch.” The jury was free to find Schanfish credible and believe his
testimony over appellant’s and Smith’s testimony. 
          Fourth, appellant argues that his statement was the product of police coercion
because Stevie Odom was told by one of the officers interviewing her that she would
lose her children if she went to jail. Appellant further testified that he gave the
statement to the police to prevent his wife’s going to jail and losing her children. 
Stevie Odom testified that the officer told her that she could lose her children and that
someone else would have to take care of them while she was in jail if she did not tell
the officer what she knew. Appellant filed a motion to suppress his confession
because the confession “was involuntary, coerced and/or enticed” from him. The trial
court denied the motion, and appellant does not contest the ruling on appeal. 
Therefore, this argument is waived and will not support his factual sufficiency claim. 
See Tex. R. App. P. 38.1(h) (a brief must contain a clear and concise argument for the
contentions made). 
          Fifth, appellant argues that the testimony of the alibi witnesses shows that his
commission of the crime was impossible. Marr testified that she last saw Johnson on
June 3, 1999, before going to bed, and that she discovered Johnson missing when she
awoke between 7:00 and 8:00 a.m. the morning of June 4, 1999. Davis testified that
she and Beckworth, appellant, and Beckworth’s cousin left the sand pits at 4:30 a.m. 
Davis then decided, later in her testimony, that they must have left the sand pits later,
because the sun was rising. She testified that she was sure she arrived at her home
between 6:00 and 6:30 a.m. Appellant testified that they left the sand pits when the
sun was beginning to rise. Beckworth testified that he could have dropped Davis and
appellant off at their vehicles between 4:00 and 6:00 a.m.
          Randall Ellis testified that he was “guesstimating” the time that appellant
arrived at his home and the time that they arrived at Sam Ellis’s shop. Randall
testified that appellant arrived at his home between 7:00 and 8:00 a.m. He then
testified that appellant arrived at his house before daylight, left for 30 to 45 minutes,
and returned to the house. Randall Ellis further testified that he and appellant left for
Sam Ellis’s shop between 8:00 and 9:00 a.m. Sam Ellis testified that appellant
arrived at his home between 7:00 and 7:30 a.m., but he later testified that he was just
estimating the time. Appellant did not testify to any specific times, but his testimony
places him at the sand pits before daylight, while his written statement places
Johnson’s murder after dawn. 
          The jury was free to believe or disbelieve the testimony of the alibi witnesses. 
See Henderson, 29 S.W.3d at 623; see also Jones, 944 S.W.2d at 648-49. Moreover,
times for which these witnesses provide an alibi do not preclude appellant’s having
driven with Johnson to the deer lease, having argued with him there, and having shot
him. Therefore, we hold that the jury’s decision to disbelieve appellant’s alibi
witnesses is not so contrary to the overwhelming weight of the evidence as to be
manifestly unjust. 
          Sixth, appellant argues that a statement made by Joel Gray to Ranger Marcus
Hilton implicated Allen Dunaway as Johnson’s killer. The jury heard testimony from
Hilton that he had interviewed Gray regarding the disappearance of Johnson in
December, 1999. Hilton testified that Gray told him that Johnson had been shot and
dismembered by several individuals, including appellant, Beckworth, Dunaway, and
others. Gray implicated Dunaway as the shooter. Gray said that he handed Clint
Schanfish his knife to “gut” the body. Appellant, Beckworth, Dunaway, and the
others then threw Johnson’s body into the Trinity River. Hilton testified that, after
Gray voluntarily provided him the knife, he had it examined, and no blood was
detected. Hilton confronted Gray, who then recanted his entire statement. Hilton had
divers search the Trinity River in the area Gray had pinpointed after Gray had
recanted his story, but they found nothing. The jury was free to believe Hilton’s
testimony and disbelieve the statements made by Gray. See Henderson, 29 S.W.3d
at 623; see also Jones, 944 S.W.2d at 648-49. Therefore, we hold that the jury’s
finding that appellant murdered Johnson is not so contrary to the overwhelming
weight of the evidence as to be manifestly unjust. The jury’s verdict is not manifestly
unjust, does not shock the conscience, and does not demonstrate bias. See Jones, 944
S.W.2d at 649.
          We overrule appellant’s sole point of error. 
 
 
 
 
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 

                                                             Evelyn V. Keyes
                                                             Justice
Panel consists of Justices Hedges, Keyes, and Duggan.


Do not publish. Tex. R. App. P. 47