Opinion issued March 4, 2004
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00709-CR




JORGE EDILBERTO MARQUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 891912




MEMORANDUM OPINION

          A jury found appellant, Jorge Marquez, guilty of murder,


 and the trial court
assessed his punishment at 50 years’ confinement. In three points of error, appellant
challenges the legal and factual sufficiency of the evidence to sustain his conviction,
and contends that the trial court erred in denying his motion for new trial based on
newly-discovered evidence. We affirm.Facts
          In September 2001, Victor Villalon was in the parking lot of the Rose Garden
Hall, where a quinceanera


 party was being held, waiting in his car to pick up his
younger brother from the party. As Villalon waited, he saw a gray car pull up next
to his car, then leave the lot. Soon after leaving the lot, the gray car returned, but
disappeared from Villalon’s sight. Villalon learned from some teenagers standing
outside in the parking lot that the passengers in the gray car had a 12-gauge shotgun. 
Villalon got out of his car and leaned over the hood to see where the gray car had
gone. When he did so, he saw appellant pointing his shotgun at another young man,
Carlos Oliva. 
          Villalon testified that there were tall lights in the parking lot and that, for about
a minute and a half, he had an unobstructed view of the shooter, who was not wearing
a mask. He testified that, as Oliva pleaded for his life, appellant shot him three times. 
Villalon was the only eyewitness to the shooting, but there were a number of
teenagers in the parking lot who saw and heard parts of the incident. Some were
walking in the parking lot, and some were in their cars. Their versions of the
shooting contained minor factual discrepancies, particularly regarding the number of
shots fired and precisely what appellant said to Oliva, but the story each told was
essentially the same.
          The scene just before the shooting was apparently chaotic. Some of the youths
in the parking lot saw a blue suburban; others, a red car. Many of the youths
attending the party had recognized some Southwest Cholos gang members, dressed
in their trademark black clothing, whom they knew from school, at the party and in
the parking lot. From one or both cars, the passengers were shouting about a gun,
Cholos gang members, and La Primera gang members. Many people heard shots
fired, but did not know where the shots came from or see what was happening. 
Others watched a large gray car roll to a stop in the lot and saw someone with a
shotgun get out of the car. When Officer Hendrie of the Houston Police Department
(HPD) arrived about an hour later, he was unable to obtain testimony at the scene
identifying the shooter.
          Officer Mosqueda, assigned to the Chicano squad of the HPD Homicide
Division, conducted the investigation. Because no one came to him with information
regarding the murder, he found witnesses himself through word of mouth. He heard
that two young men known as “Froggy” and “Pulga” had been seen at the party and
may have been involved. He later discovered that “Froggy” was appellant’s street
name, that “Pulga” was Gabriel Santos’s street name, and that Santos owned a gray
car.
          Mosqueda prepared a photo lineup and showed it to Villalon and another
young man who been at the party, Eder Morales. Villalon and Morales identified
Santos as the driver of the gray car. Villalon identified appellant as the shooter and
repeated his identification of appellant at trial. However, when he took the stand
again as a defense witness, Villalon testified that Mosqueda pressured him to take a
good look at appellant’s picture before taking him to a room where Villalon’s
identification of appellant was videotaped. Mosqueda denied pressuring Villalon,
and Villalon admitted he did not know that he had been taped. Villalon also testified
that, once he saw appellant in person, he informed the prosecution that appellant was
not the shooter. Villalon stated that the shooter was thinner than appellant; on cross-examination, however, he admitted that appellant may have looked thinner because
he had on baggier clothing. 
          Appellant admitted that he was a member of La Primera, but said that he was
trying to ease out of the gang. He testified that he was not at the party on the night
of the murder and did not shoot Oliva. Appellant presented a number of alibi
witnesses, including his girlfriend, his relatives, and several friends who attended the
quinceanera. His family and girlfriend testified that appellant attended a family
gathering at his aunt’s home early in the evening, spent the next few hours watching
a movie at his father’s apartment, then returned to his aunt’s house about 1 a.m. All
of the family members recalled that appellant had been wearing khaki pants and a
light blue shirt. Appellant also suggested that another man, Rojilio Barron, was the
shooter.
          Appellant’s friends testified that they did not see him at the Quinceanera. 
Carlos Gallegos stated that he saw Santos inside the Hall before hearing all the
gunshots and that Santos was with his “homeboy.”


 Carolina Castro testified that she
also saw Santos at the party with his friend, Rojilio Barron. When Castro was shown
the photo spread, she could not identify anyone as the shooter. She noticed that
Barron’s photograph was not included. 
          Eliseo Acosta saw a gray car with three passengers in it. The passenger in the
front seat stared at him, then pulled a 12-gauge shotgun on him, so Acosta ran inside
the Hall. Acosta testified that appellant was not the passenger he saw in the gray car;
he described the passenger as being thinner, with a different hairstyle. 
          Santos exercised his Fifth Amendment right against self-incrimination and did
not testify at the guilt/innocence phase of the trial. However, when he testified during
the sentencing phase, Santos admitted that he was the driver of the gray car and stated
that the front seat passenger who killed Oliva was not appellant, but Barron. Barron,
however, testified that he was not a gang member, was not at the Quinceanera party,
and did not kill Oliva. 
Sufficiency of the Evidence
In his first two points of error, appellant contends that the evidence was legally
and factually insufficient to show that he committed the offense of murder. 
Standard of Review
In reviewing legal sufficiency, we view the evidence in the light most favorable
to the verdict and ask whether a rational trier-of-fact could find the essential elements
of the crime beyond a reasonable doubt.  King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000); Valencia v. State, 51 S.W.3d 418, 423 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d).  The trier-of-fact is the sole judge of the weight and credibility
of the witness testimony.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
The fact-finder may reasonably infer facts from the evidence before it, credit the
witnesses if it cares to, disbelieve any or all of the testimony proffered, and weigh the
evidence in the manner it chooses.  Id.
In reviewing factual sufficiency, we examine all the evidence neutrally and ask
whether proof of guilt is so obviously weak as to undermine confidence in the jury’s
determination or so greatly outweighed by contrary proof as to indicate that a
manifest injustice has occurred.  Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim.
App. 2003); King, 29 S.W.3d at 563; Valencia, 51 S.W.3d at 423.  While conducting
our analysis, if there is probative evidence supporting the verdict, we must avoid
substituting our judgment for that of the trier-of-fact, even when we disagree with the
determination.  King, 29 S.W.3d at 563.  
Evidence of Murder
A person commits the offense of murder if he intentionally or knowingly
causes the death of an individual or, with the intent to cause serious bodily injury,
commits an act clearly dangerous to human life that causes the death of an individual. 
Tex. Pen. Code. Ann. § 19.02(b) (Vernon 2003). Appellant argues that the State has
based its case exclusively on the testimony of a single eyewitness and failed to
present corroborating evidence supporting the identification of appellant as the
shooter. Because there was no physical evidence linking appellant to the murder and
no motive was presented, appellant claims that the State failed to prove each and
every element of the offense beyond a reasonable doubt.
Evidence as to the identity of a perpetrator of an offense can be proved by
either direct or circumstantial evidence. Hernandez v. State, 13 S.W.3d 78, 80 (Tex.
App.—Texarkana 2000, no pet.). Furthermore, a conviction may be based on the
testimony of a single eyewitness. Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim.
App.1971); Pitte v. State, 102 S.W.3d 786, 788 (Tex. App.—Texarkana 2003, no
pet.). Mistaken identity is not a defense, and the State is not required to rebut an
accused’s defensive theory beyond a reasonable doubt. Giesberg v. State, 945
S.W.2d 120, 124 (Tex. App.—Houston [1st Dist.] 1996), aff’d, 984 S.W.2d 245 (Tex.
Crim. App. 1998).
Victor Villalon, the sole eyewitness, was in the parking lot when he saw the
murder. The parking lot was well lit and he got a good look at the shooter’s face for
one and a half minutes. The shooter was not wearing a mask, and there was nothing
obstructing Villalon’s view. Villalon identified appellant as the shooter from a photo
lineup, and re-identified appellant as the shooter during his testimony, but he later
recanted this testimony. In essence, appellant argues that Villalon’s contradictory
testimony as a defense witness should negate his eyewitness testimony as a State’s
witness. Appellant stresses his alibi, the absence of any physical evidence linking
him to the shooting, and the lack of motive. He also contends that Santos’s
punishment-phase identification of Barron as the shooter renders the evidence
insufficient.
After reviewing only the evidence that is favorable to the verdict, we hold that
the evidence was legally sufficient for a rational trier-of-fact to find the essential
elements of the crime beyond a reasonable doubt.  When we view the evidence
neutrally, we observe that the jury decided, in this case, to believe Villalon’s initial
testimony and to disbelieve his later testimony. The jury also evidently did not
believe Santos’s testimony that Barron killed Oliva or the alibi witnesses’ contentions
that appellant was not at the scene of the crime.  Because the jury, as trier-of-fact, is
the sole judge of the weight and credibility of the witness testimony, and because the
proof of guilt was not so obviously weak as to undermine confidence in the jury’s
determination, or so greatly outweighed by contrary proof as to indicate that a
manifest injustice occurred, we hold that the evidence was factually sufficient to
support the verdict.
We overrule appellant’s first and second points of error.
Motion for New Trial Based on Newly Available Evidence
          In his third point of error, appellant argues that the trial court erred in denying
his motion for new trial based on evidence newly discovered at the sentencing phase. 
          Standard of Review
          The trial court has discretion to decide whether to grant a new trial based upon
newly-discovered evidence, and its ruling will not be reversed absent an abuse of
discretion. Keeter v. State,74 S.W.3d 31, 37 (Tex. Crim. App. 2002). To show that
the court abused its discretion the record must indicate that: (1) the evidence was
unknown or unavailable to the movant before trial; (2) the failure to discover it was
not due to want of diligence; (3) the evidence is probably true and its materiality is
such as will probably bring about a different result in another trial; and (4) it is
competent, not merely cumulative, corroborative, collateral, or impeaching. Pinkston
v. State, 744 S.W.2d 329, 335 (Tex. App.—Houston [1st Dist.] 1988, no pet.). 
          In all new-evidence cases, the credibility of the witnesses and the probable
truth of the new evidence is primarily a determination for the trial judge. Etter v.
State, 679 S.W.2d 511, 515 (Tex. Crim. App.1984); Williams, 504 S.W.2d at 483. 
The judge is well-positioned to see the witnesses, observe their demeanor, and
determine their credibility. Id. If the newly-discovered evidence is of questionable
weight and credibility, and probably would not bring about a different result upon a
new trial, the court does not abuse its discretion in refusing a new trial. Jones, 711
S.W.2d at 37.
          Newly-Discovered Evidence
          Appellant’s counsel moved for new trial based on newly-discovered evidence
and sought to have Santos repeat his testimony exonerating appellant. Counsel
attached to his motion for new trial an affidavit in which he swore that, despite
talking with numerous witnesses, he did not learn until Santos testified at the
punishment phase that Barron was the shooter. In addition, after hearing Santos’s
testimony at the punishment phase, appellant’s counsel spoke with a woman who
claimed to have a taped conversation in which another woman said that Barron was
the shooter. Appellant’s counsel did not, however, attach an affidavit from this
woman, nor did he offer the tape into evidence. Appellant did not submit an affidavit
regarding his knowledge of this evidence, or whether he had conveyed it to counsel.
          When, as here, a witness who has asserted a Fifth Amendment privilege against
self-incrimination no longer asserts the privilege and elects to testify, such testimony
can constitute new evidence for purposes of a motion for new trial. Drew v. State,
743 S.W.2d 207, 224 (Tex. Crim. App. 1987). However, to successfully obtain a new
trial based on newly-discovered evidence, the movant must establish that the evidence
was unknown to him at the time of his trial. Id. at 226. A new trial is not allowed to
obtain evidence that is known at the time of trial, even if a defendant has not
conveyed knowledge of the evidence to his attorney. Id. at 227 n.14. Here, the
evidence appellant contends was newly discovered was Santos’s punishment phase
identification of Barron as the shooter. Although appellant’s counsel contended that
he did not know of this evidence at the guilt/innocence phase of the trial, appellant
himself suggested during the guilt/innocence phase that Barron was the actual
shooter. Moreover, by calling Santos as a defense witness, appellant’s counsel
apparently believed that Santos’s testimony would be helpful to his client. Given
this, we conclude that this evidence was not “newly discovered.” Appellant knew of
it at the time of trial. Even if his counsel was unaware of the evidence, appellant
cannot prevail. Id. It is also clear that the trial court, having heard Santos’s
testimony at the punishment phase, yet denying the motion for new trial, did not
consider Santos’s testimony to be credible.
          We hold that the trial court did not abuse its discretion.
          We overrule appellant’s third point of error.
          We affirm the judgment.




                                                             Evelyn V. Keyes
                                                             Justice


Panel consists of Chief Justice Radack and Justices Keyes and Alcala.

Do not publish. Tex. R. App. P. 47.4.