Opinion issued May 10, 2007







 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-1163-CR






JARVIS LAMONT MORGAN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1016888






MEMORANDUM OPINION

 A jury convicted appellant, Jarvis Lamont Morgan, of possession of less than
one gram of cocaine. Appellant pleaded true to two enhancements, and the trial court
assessed punishment at 15 years' confinement. In three points of error, appellant
contends (1) the evidence is legally insufficient, (2) the evidence is factually
insufficient, and (3) the trial court erred in denying his motion to suppress. We
affirm.

BACKGROUND

 S. Vice, a patrol officer for the Baytown Police Department, was driving east
on Honeycutt Street, when he saw two cars on Fifth Street at the intersection in front
of him. Vice first noticed that appellant, who was driving a Blue Nissan, passed the
other car on the right side of the single lane of traffic. Appellant then pulled up past
the designated point of stop at the intersection. After the first car proceeded through
the intersection, appellant turned left and headed west, toward Vice, on Honeycutt
Street. Vice then made a u-turn and began following appellant while he checked the
license plate number to determine whether the car appellant was driving was stolen. 
While he was following appellant, Vice saw appellant pull a jacket from either the
center console or passenger seat and toss it into the back seat of the car.

 Once Vice determined that the car had not been reported stolen, he turned on
his lights and siren and initiated a traffic stop. Appellant did not stop, but continued
driving for a block on Honeycutt, before turning on Third Street and driving another
block. Vice called for back-up because he was concerned about the length of time it
had taken appellant to stop his vehicle.

 After calling for back-up, Vice got out of his patrol car and approached
appellant. When Vice told appellant why he was being stopped, appellant starting
arguing with Vice. Appellant gave Vice his license and insurance information. Vice
then asked appellant who owned the car, and appellant responded that the information
was on the insurance card. The name on the insurance card was "Sharon Bernard." 
Vice testified that he again asked who owned the car to determine whether Sharon
Bernard had given appellant permission to drive the car. Appellant responded that
he did not have to give Vice that information and "that was all he had to say [to
Vice]." 

 Vice testified that he became very suspicious of appellant because appellant
was "being very difficult and wouldn't answer hardly any of the questions that [Vice]
asked him." Once back-up arrived, Vice decided that he would arrest appellant for
the traffic offenses Vice had witnessed. Vice informed appellant he was under arrest
for running a stop sign and for passing in an unsafe manner and ordered appellant to
get out of the car. Appellant refused to comply, arguing that he could not be arrested
for moving traffic violations.

 When appellant continued to refuse to get of our the car, Vice, who had his
Taser out, physically grabbed appellant to remove him from the car. Appellant said,
"Oh, you're going to tase me. You're going to tase me." Vice told appellant he
would tase him if he did not comply, and appellant began to get of the car.

 Vice testified that appellant did not get out of the car normally, but slowly bent
down and brought his feet out, and that while he was bending over, appellant reached
towards the floorboard underneath the driver's seat. Vice was alarmed because he
had seen a training video of a similar situation, in which the person being arrested had
pulled out a handgun and shot the arresting officer.

 Once Vice determined that appellant did not have a weapon, he holstered his
Taser, and attempted to handcuff appellant. After a brief struggle, Vice was finally
able to wrestle appellant's left hand behind his back and to restrain him. Vice then
performed a pat-down search of appellant, but did not find any drugs or weapons. 
Appellant, who was still being aggressive and uncooperative, spit in Vice's face.

 Vice then attempted to put appellant in the patrol car, but appellant stiffened
his body and refused to sit. Vice lifted appellant's handcuffed hands to get him to
duck his head and pushed appellant into the back of the patrol car. Appellant's legs
were still outside the car, and Vice could not close the door. When Vice tried to grab
appellant by the knees, appellant began to kick. Vice got into the car with appellant
and began applying pressure underneath appellant's ears and jaw. As Vice was
getting out of the car, appellant kicked him again. Vice then applied his Taser to the
back of one of appellant's legs. Once appellant was subdued, Vice got out of the car.

 Pursuant to Baytown Police Department policy, Vice then conducted a search
of the car appellant was driving when he was arrested. During the search he found
a black leather jacket on the back seat. He described it as a man's jacket,
approximately mid-thigh in length. In the pocket of the jacket, Vice recovered an
"off-white powder substance," which tested positive for cocaine. Vice collected the
powder in a baggie as evidence and transported appellant to the Baytown jail. Vice
did not recover the leather jacket as evidence, but left it in the car.

 Sharon Bernard, appellant's common-law wife, testified that on the day of the
incident, she had loaned appellant her car. After the car was towed, she retrieved it
from the police station. Bernard testified that appellant owned a long leather jacket
with a hood, but she did not know if he had it with him on the day he was arrested. 
She also did not remember whether the jacket was in the car when she retrieved it
from the police station.

 Appellant, testifying in his own behalf at trial, said that he took Bernard to
work, then, later in the day, picked up his cousin and her friends at college and
dropped them off at Wal-Mart. Appellant testified that he thought Vice pulled him
over to harass him. He testified that he did not pull over right away because there
were cars parked on the side of the road. He also admitted pulling up next to the car
on Fifth Street, but testified that he was talking to its occupant. Appellant said that
he was uncooperative because he did not know that he could be arrested for traffic
offenses. He also said that the jacket in the back seat of the car was not his and he did
not know there was cocaine in the jacket. Appellant testified that, had he known
there was cocaine in the car, he would not have confronted the officer as he did. 

 Appellant also testified that he had served four years in prison for aggravated
assault and two years in prison for possession of a controlled substance. The State
also introduced evidence of a second conviction for possession of cocaine.

Legal Sufficiency In his first point of error, appellant argues that the evidence is legally
insufficient to support his conviction for possession of a controlled substance. In
evaluating the legal sufficiency of the evidence, we must view the evidence in the
light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt.
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); see also Roberson v.
State, 80 S.W.3d 730, 734 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd).
Although our analysis considers all evidence presented during trial, we may not
reweigh the evidence and substitute our judgment for that of the jury. King, 29
S.W.3d at 562; Roberson, 80 S.W.3d at 734.

 To prove possession, the State must show that the accused (1) exercised actual
care, custody, control or management of the controlled substance, and (2) was
conscious of his connection with it and knew what it was. See Tex. Health &
Safety Code Ann. § 481.002(38) (Vernon 2003 & Supp. 2006), § 481.112(a)
(Vernon 2003); Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).
Though the accused need not have exclusive possession of the drug, mere presence
in the vicinity of a controlled substance or where contraband is being used or
possessed by others does not, by itself, support a finding that a person is a party to an
offense. Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); Harvey v.
State, 487 S.W.2d 75, 77 (Tex. Crim. App. 1972); Roberson, 80 S.W.3d at 735. 
When the accused is not in exclusive possession of the place where the contraband
is found, there must be additional, independent facts and circumstances that
affirmatively link him to the contraband in such a way that it can be concluded that
the accused had knowledge of the contraband and exercised control over it. Deshong
v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981); Roberson, 80 S.W.3d at 735.
An affirmative link generates a reasonable inference that the accused knew of the
contraband's existence and exercised control over it; such a link may be established
through either direct or circumstantial evidence. Johnson v. State, 658 S.W.2d 623,
627 (Tex. Crim. App. 1983), rev'd on other grounds, Woods v. State, 956 S.W.2d 33
(Tex. Crim. App. 1997); Dickerson v. State, 866 S.W.2d 696, 700 (Tex. App.--
Houston [1st Dist.] 1993, pet. ref'd); Brown, 911 S.W.2d at 747.

 Several factors may help to establish an affirmative link between an accused
and the contraband, including (1) whether the contraband was in plain view; (2)
whether the contraband was conveniently accessible to the accused; (3) whether the
accused was the driver of the vehicle in which the contraband was found; (4) whether
the contraband was found on the side of the vehicle where the accused was sitting;
(5) whether conduct by the accused indicated a consciousness of guilt; and (6) the
amount of the contraband found. Roberson, 80 S.W.3d at 735, n. 2 (citing Hurtado
v. State, 881 S.W.2d 738, 743, n. 1 (Tex. App.-- Houston [1st Dist.] 1994, pet.
ref'd)); Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet.
ref'd). The affirmative-link terminology does not constitute a unique legal rule, but
is only a shorthand way of expressing what must be proven to establish that drugs
were possessed knowingly or intentionally. Brown, 911 S.W.2d at 747. Indeed, the
number of linking factors present is not as important as the "logical force" they create
to prove that the crime was committed. Hurtado, 881 S.W.2d at 743; Roberson, 80
S.W.3d at 735.

 In this case, the evidence shows that appellant had multiple affirmative links
to the cocaine. Appellant was the sole occupant of the vehicle in which the cocaine
was found. See Hyett v. State, 58 S.W.3d 826, 830 (Tex. App.--Houston [14th Dist.]
2001, pet. ref'd) (stating that appellant's sole occupancy of vehicle in which cocaine
was found affirmatively linked him to cocaine). Appellant had convenient access to
the jacket in which the cocaine was discovered--he was seen tossing it into the back
seat of the car moments before he was pulled over. See Robinson v. State, 174
S.W.3d 320, 326 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) (stating that term
"conveniently accessible" means that contraband is within close vicinity of accused
and easily accessible while in vehicle so as to suggest accused had knowledge of
contraband and exercised control over it). Appellant's conduct in throwing the jacket
in the backseat and in evading detention for several blocks could also indicate a
consciousness of guilt that affirmatively link him to the cocaine. See Valencia v.
State, 51 S.W.3d 423 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd) (stating that
recovery of easily-accessible cocaine in hatchback of car, coupled with defendant's
suspicious behavior, constituted evidence affirmatively linking defendant to
contraband). 

 In this case, we hold that there were sufficient affirmative links between the
appellant and the contraband to conclude that appellant knowingly possessed the
cocaine. Accordingly, we overrule point of error one.

Factual Sufficiency


 In his second point of error, appellant argues that the evidence is factually
insufficient to support his conviction for possession of a controlled substance. When
we address a challenge to the factual sufficiency of the evidence, we review all of the
evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App.
1997). We will set the verdict aside only if (1) the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great
weight and preponderance of the evidence. Johnson, 23 S.W.3d at 11. Under the
first prong of Johnson, we cannot conclude that a conviction is "clearly wrong" or
"manifestly unjust" simply because, on the quantum of evidence admitted, we would
have voted to acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006). Under the second prong of Johnson, we cannot declare that
a conflict in the evidence justifies a new trial simply because we disagree with the
jury's resolution of that conflict. Watson v. State, 204 S.W.3d at 417. Before finding
that evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. 
Watson v. State, 204 S.W.3d at 417. In conducting a factual-sufficiency review, we
must also discuss the evidence that appellant contends most undermines the jury's
verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). The
fact-finder alone determines what weight to place on conflicting testimony because
that determination depends on the fact-finder's evaluation of witnesses' credibility
and demeanor. Cain, 958 S.W.2d at 408-09. As the sole determiner of the credibility
of the witnesses, the fact-finder may choose to believe all, some, or none of the
testimony presented. Id. at 407 n.5.

 Appellant argues that the evidence is factually insufficient because (1) he did
not own the car he was driving, (2) several other people rode in the car during the
day, and (3) Vice's testimony about seeing appellant toss the black jacket into the
back seat of the car was not credible.

 Regarding appellant's first argument, we note that the dispositive issue is not
merely who owns the car, but who has control of it at the time the contraband is
discovered. See Villegas v. State, 871 S.W.2d 894 (Tex. App.--Houston [1st Dist]
1994, pet. ref'd). Bernard testified that appellant had permission to drive the car on
the day he was arrested.

 Although there is evidence that other people rode in the car with appellant on
the day he was arrested, there is no evidence linking them to the jacket or the cocaine
found in the jacket. In contrast, appellant is specifically linked to the jacket. Vice
testified that he saw appellant pick up the jacket and throw it into the back seat after
Vice made a u-turn and began following him. Vice also testified that the jacket was
a long, man's jacket. Bernard testified that appellant owned a long, black leather
jacket.

 Regarding appellant's argument that Vice's testimony about the jacket being
not credible, we note that the jury is the sole determiner of the credibility of the
witnesses and could choose to believe Vice and disbelieve appellant. Cain, 958
S.W.2d at 407 n.5.

 In this case, we hold that there is factually sufficient evidence to show that
appellant knowingly possessed the cocaine. Accordingly, we overrule point of error
two.


MOTION TO SUPPRESS

 In point of error three, appellant contends the trial court erred in denying his
motion to suppress the evidence recovered from the car he was driving when he was
arrested. Specifically, appellant contends that "[t]he State failed to prove the officer
had probable cause for stopping the appellant's vehicle, and failed to prove that the
driver of the vehicle committed a traffic offense."

 A trial court's ruling on a motion to suppress evidence will not be set aside
unless there is an abuse of discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 996); Taylor v. State, 945 S.W.2d 295, 297 (Tex. App.--Houston [1st
Dist.] 1997, pet. ref'd). In reviewing a trial court's ruling on a motion to suppress,
we apply a bifurcated standard, giving almost total deference to the trial court's
determination of historical facts supported by the record and reviewing de novo the
trial court's application of the law of search and seizure. Carmouche v. State, 10
S.W.3d 323, 327 (Tex . Crim. App. 2000). At the suppression hearing, the trial court
is the sole judge of the weight and credibility of the evidence. Jaggers v. State, 125
S.W.3d 661, 666 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd).

 Despite appellant's belief that he could not be arrested for a moving traffic
violation, an officer is required to issue a written notice to appear only when the
offense charged is for speeding or for violating the open-container law. Tex. Transp.
Code Ann. § 543.004(a)(1) (Vernon Supp. 2006). Otherwise, arrest is at the officer's
discretion. Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 1557
(2001). "A peace officer may arrest an offender without a warrant for any offense
committed in his presence or within his view." Tex.Code Crim. Proc. Ann. art.
14.01(b) (Vernon 2005). Under New York v. Belton, an officer may lawfully search
both the motorist's vehicle and his person incident to the motorist's arrest. 453 U.S.
454, 460-61, 101 S.Ct. 2860, 2864 (1981). 

 Vice testified that appellant was stopped for two traffic offenses committed
within his view--failure to stop at a stop sign and unsafe lane passing on the right. 
The Transportation Code provides that

 An operator required to stop [at a stop sign] shall stop before entering
the crosswalk on the near side of the intersection. In the absence of a
crosswalk, the operator shall stop at a clearly marked stop line. In the
absence of a stop line, the operator shall stop at the place nearest the
intersection roadway where the operator has a view of approaching
traffic on the intersecting roadway.


Tex. Transp. Code Ann. § 544.010(c) (Vernon 1999) (emphasis added). Vice
testified that, as appellant approached the intersection of Fifth and Honeycutt streets,
he did not stop until he had passed the stop sign. Vice testified that "[appellant's]
vehicle was actually out into the crossing lane of traffic." Therefore, Vice had
probable cause to believe that appellant had violated section 544.010.

 The Transportation Code also provides

 (a) An operator may pass to the right of another vehicle only if
conditions permit safely passing to the right and:


 (1) the vehicle being passed is making or about to make a
left turn, and


 (2) the operator is:


 (B) on a one-way street or on a roadway
having traffic restricted to one direction of
movement and the roadway is free from
obstructions and wide enough for two or more
lines of moving vehicles.


Tex. Transp. Code Ann. § 545.057(a)(1),(2)(B) (Vernon 1999). Vice testified that
he saw appellant pass a car on the right, then stop in the intersection, before the car
appellant passed proceeded through the intersection. Appellant then turned left. The
vehicle appellant passed was not turning left. Therefore, Vice had probable cause to
believe that appellant had violated section 545.057.

 Because Vice had probable cause to arrest appellant for violating sections
544.010 and 545.057, he also had the right to search the vehicle appellant was driving
at the time of his arrest. Belton, 453 U.S. at 460-61, 101 S.Ct. at 2864.

 Accordingly, we overrule point of error three.







CONCLUSION


 We affirm the judgment of the trial court.


 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b).