**Darrell Hobson PINKSTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00997–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 7, 1988.

Robert A. Scardino, Jr., Houston, for appellant.

Calvin Hartmann, Asst. Dist. Atty., for appellee.

Before EVANS, C.J., and SAM BASS and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

A jury found appellant guilty of aggravated robbery with the use of a firearm. The trial court assessed punishment at 15 years and one day imprisonment. Appellant asserts five points of error.

At approximately 7:45 PM on July 6, 1984, the complainant, Reginald Brinkley, answered a knock on his garage door. He was confronted by two men, one of whom asked if "Amy was there?" Mr. Brinkley explained that no one by that name lived there. Brinkley testified that appellant, Darrell Pinkston, and his companion, David Wilson, burst through the doorway, knocking Brinkley to the floor.

Armed with guns, the two men forced Brinkley into the adjacent room where his wife was eating dinner. While Wilson held the couple at gunpoint, appellant went upstairs and returned with sheets, which he used to tie the Brinkleys' hands and feet. The couple was made to lie face down on the living room floor. Appellant then ransacked the upper living area while Wilson went through the downstairs.

At various intervals during the robbery, the Brinkleys observed appellant carrying items from the upstairs to the downstairs. At one point, appellant demanded that Mr. Brinkley tell him where his money was kept. When Brinkley stated that there was no more money, appellant threatened "to blow off" his head. After approximately 35 to 40 minutes, the two men loaded the stolen property into Brinkley's car and drove away. The stolen property included gold cufflinks, western belts, guns, watches, jewelry, and a fur coat.

In his first and second points of error, appellant contends that his trial counsel's failure to interview potential alibi witnesses, and his failure both to go to the jury for punishment and to request a jury instruction on probation, fell below the objective standard of reasonableness required of trial counsel and deprived him of his constitutional right to effective assistance of counsel.

The test for ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Effective counsel is to be judged by the sixth amendment standard of "reasonably effective assistance." *Ex parte Duffy*, 607 S.W.2d 507 (Tex.1980). Under this standard, the sufficiency of an attorney's assistance is gauged by the totality of the representation of the accused. *Ferguson v. State*, 639 S.W.2d 307 (Tex.Crim. App.1982); *Passmore v. State*, 617 S.W.2d 682 (Tex.Crim.App.1981). The constitutional right to counsel does not mean errorless counsel or counsel whose competency is to be judged by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. *Ex parte Duffy*, 607 S.W.2d at 516–17. Each case must be considered on its own particular circumstances. *Mercado v. State*, 615 S.W.2d 225 (Tex.Crim.App.1981).

First, appellant claims that his trial counsel failed to perform the investigation that would have uncovered the testimony of potential alibi witnesses. He contends that his counsel did not know the evidence existed and that due to his failure to investigate, the evidence was not placed before the jury.

An attorney has a duty to make an independent investigation of the facts of his client's case; counsel's failure to seek out and interview potential witnesses is ineffective where the result is that any viable defense available to the accused is not advanced. *See Ex parte Ewing,* 570 S.W.2d 941 (Tex.Crim.App.1978).

In the instant case, appellant's trial counsel presented an alibi defense. At trial, appellant testified that he was in Austin on July 6, 1984, the date of the offense. He claimed that he arrived in Austin on July 3, 1984, to stay with his friend, Jim Green, and other guests for the Fourth of July holidays. He stated that he played golf with a man named Victor Wallace and two Austin police officers on the afternoon of July 6, 1984, and then spent the evening in the company of his friend and the other guests.

Appellant's trial counsel called Green, Wallace, and one of the officers to testify. Green testified that appellant stayed with him from July 3rd through July 9th. He claimed that he spent every evening with appellant, including the evening of July 6, 1984. Wallace and the officer testified that they played golf with appellant over the holidays, although neither was sure of the exact date.

An attorney's failure to investigate or present witnesses will be a basis for establishing ineffective assistance of counsel only where it is shown that the witnesses would have been available and that the presentation of the evidence would have benefitted appellant. *See Coble v. State,* 501 S.W.2d 344 (Tex.Crim.App.1973). In the instant case, the record does not indicate that the other officer or the guests were available for interviews or that their testimony would have benefitted appellant. There is no showing that the other officer would have been able to be more exact about the date on which he played golf with appellant two years earlier, nor is there any showing that the other guests would have known or remembered where appellant was at the time of the offense.

Appellant also claims that his trial counsel failed to interview Gerald Howell, who would have established that he, not appellant, along with Wilson robbed the Brinkleys. However, in his fourth point of error, appellant claims that Howell refused to be interviewed or to testify about the Brinkley robbery, thus undermining any argument that his counsel was ineffective in failing to conduct an interview.

Next, appellant contends that his trial counsel failed to go to the jury for punishment and failed to request a jury instruction on probation at the punishment phase of the trial. Appellant notes that the record shows that he was clearly eligible for probation because he had no prior felony convictions; therefore, the jury could have recommended probation, if it had assessed punishment of less than 10 years. Tex.Code Crim.P.Ann. art. 42.12, sec. 3a (Vernon Supp.1988).

An examination of the record reveals that appellant entered a plea of not guilty and requested that the trial court assess punishment. No application for probation was made. Appellant argues that his attorney should have told him that he was eligible for probation and that the trial court could not grant him probation if the jury found him guilty of aggravated robbery. Tex.Code Crim.P.Ann. art. 42.12, sec. 3g(a)(1)(D) (Vernon Supp.1988).

However, appellant has failed to prove that his counsel did not inform him of such matters. The record before us does not reveal what advice appellant was given by his attorney, nor does it explain the defense counsel's strategy. Without conclusive support in the record, we cannot presume that the decisions originated with the attorney and were not the result of acquiescence to the client's wishes. *Shepherd v. State,* 673 S.W.2d 263, 267 (Tex. App.—Houston [1st Dist.] 1984, no pet.).

An assertion of ineffective assistance of counsel will be sustained only if the record affirmatively supports such a claim. *Ex parte Ewing*, 570 S.W.2d at 943.

■ Moreover, matters of trial strategy will be reviewed only if an attorney's actions are without a plausible basis. *Ex parte Burns*, 601 S.W.2d 370 (Tex.Crim. App.1980). In the instant case, appellant was being tried for aggravated robbery of an elderly couple with the use of a firearm in their home. It was reasonable to believe that the trial court might be more lenient than the jury in such a case. As it was, the trial court assessed punishment at 15 years and one day, a relatively light sentence considering that the maximum punishment is life or any term of not less than five years or more than 99 years. Tex.Penal Code Ann. secs. 12.32 and 29.03 (Vernon Supp.1988). Therefore, under the facts of the instant case and based on a totality of the representation, appellant was not denied effective assistance of counsel at his trial. Appellant's first and second points of error are overruled.

In his third point of error, appellant asserts that the trial court erred in overruling his motion to suppress Mr. and Mrs. Brinkley's in-court identifications. Appellant claims that the in-court identifications were tainted by the suggestive nature of the out-of-court identifications.

At the hearing on the motion to suppress, Officer Davis of the Houston Police Department testified that on July 17, 1984, Mrs. Brinkley told one of the investigating officers that she could not identify anyone involved in the robbery.

Officer Davis also testified that on August 13, 1984, 38 days after the offense, he showed a photo spread to Mr. and Mrs. Brinkley at their residence. The spread consisted of six black and white photos from the driver's license division of the Department of Public Safety. Davis testified that the persons depicted in the photos were similar in race, age, and facial hair.

Mrs. Brinkley was shown the photo spread before Mr. Brinkley arrived home. She was unable to identify anyone. At that time, she indicated that she did not think that she had seen the appellant well enough to identify him because he was upstairs most of the time.

When Mr. Brinkley arrived home that day, he was shown the same photo spread while his wife was in another room. He was not told that she had been unable to identify anyone. He positively identified appellant as one of the men who robbed him.

On October 22, 1984, Mr. and Mrs. Brinkley attended a line-up at the Harris County jail, in which appellant participated along with four other men of similar appearances. Appellant's trial counsel was present. The Brinkleys were told not to communicate with each other in any way. After the line-up, each was taken into a separate room and asked if they could identify anyone. Both Mr. and Mrs. Brinkley made positive identifications of appellant, and testified that they did so based on their observations of him during the robbery.

■ Mrs. Brinkley testified at the hearing that prior to the line-up she was not sure if she could identify anyone, but that once she saw the man in person, she was able to make the identification without hesitation. She stated that "seeing the whole person apparently made a difference rather than photographs, but I knew it was him when I saw him."

Mr. and Mrs. Brinkley testified that although they discussed the photo spread identification prior to the line-up, she never learned that it was appellant that her husband had identified. Further, she testified that her husband did not tell her whom to identify before the line-up.

Appellant also argues that the out-of-court identifications were suggestive because he was the only person who appeared in both the photo spread and the line-up. However, this contention was not presented at the motion to suppress, nor is it supported elsewhere in the record. Moreover, because appellant was positively identified from the photo spread by Mr. Brinkley and not identified by Mrs. Brinkley, it was reasonable to consider him a suspect

and to include him in the subsequent line-up that they both attended.

The record does not reveal any unnecessarily suggestive procedures by the officers, nor any improper discussions between the Brinkleys. More importantly, the couple testified that their in-court identifications were based on the robbery and were independent of any out-of-court identifications.

■ Finally, appellant notes that both Mr. and Mrs. Brinkley testified that they only saw appellant for approximately 35 to 45 seconds of the approximately 40 minutes that he was in their house, and that those seconds were divided into several intervals. Appellant adds that Mr. Brinkley testified that his glasses were knocked from his face when he was forced to lie on the floor, and that Mr. Brinkley testified that he has trouble seeing up close without them. However, Mr. Brinkley also testified that he was wearing his glasses when he answered the door and that even thereafter, he was able "to make out" the appellant. Mrs. Brinkley testified that she had no trouble with her vision.

Moreover, the length of time during which the Brinkleys viewed appellant and the fact that Mr. Brinkley had trouble seeing without his glasses go to the weight of the in-court identifications and not to their admissibility. *See Moore v. State*, 700 S.W.2d 193, 198 (Tex.Crim.App.1985). Appellant's third point of error is overruled.

In his fourth point of error, appellant asserts that the trial court erred in denying his out-of-time amended motion for new trial based on newly available evidence.

The record reflects that the trial court imposed sentence on October 23, 1986. Appellant filed a motion for new trial on November 20, 1986. No ruling was made on this motion; consequently, it was overruled by operation of law on January 6, 1987. Tex.R.App.P. 31(e)(3).

On May 13, 1987, appellant filed an amended motion for new trial in which he alleged that newly available evidence would disclose that Gerald Howell, not appellant, committed the Brinkley robbery.

After a hearing on the motion, the trial court denied appellant a new trial.

The State's response to appellant's point of error is two-fold: 1) that the trial court did not have jurisdiction to entertain appellant's motion for new trial; and 2) that the trial court did not err in denying the appellant a new trial.

Tex.R.App.P. 31(a)(1) provides that a motion for new trial or an amended motion for new trial must be filed within 30 days of the date sentence is imposed or suspended in open court. In the instant case, appellant's amended motion for new trial was not filed until more than six months later.

■ A trial court lacks jurisdiction to grant a motion for new trial filed more than 30 days after sentencing. *Deloro v. State*, 712 S.W.2d 805 (Tex.App.—Houston [14th Dist.] 1986, no pet.); *see also Washburn v. State*, 692 S.W.2d 576 (Tex.App.—Houston [1st Dist.] 1985, no pet.); *Ganim v. State*, 638 S.W.2d 628 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

Appellant argues that the trial court had jurisdiction to hear his out-of-time motion because it was based on newly available evidence that he was unable to obtain earlier. At the time of appellant's trial, Howell was serving sentences in the Texas Department of Corrections for convictions on several other counts of aggravated robbery, some of which he had committed with appellant's co-defendant, Wilson. Howell testified that sometime in 1985, before appellant's trial, he was questioned by appellant's investigator about the Brinkley robbery. He stated that he could not remember if he told the investigator that he committed the robbery. However, he testified that shortly thereafter, he told his own attorney that he was involved in the Brinkley offense. His attorney advised him not to discuss the Brinkley robbery with anyone.

After appellant's trial, Howell's convictions were reversed. Howell was then questioned by a representative of appellant's counsel on appeal about the Brinkley robbery. He testified that he told the representative that he would not be willing to

discuss anything until he had made his "deal" with the State on the other charges. Howell subsequently entered into a plea bargain agreement with the State and was sentenced to 25 years imprisonment.

Thereafter, Howell told appellant's attorney on appeal that he would be willing to testify at appellant's motion for new trial that he, not appellant, committed the Brinkley robbery.

Appellant contends that because Howell was unwilling to testify earlier, he was denied his constitutional right to compulsory process and therefore was entitled to an out-of-time motion and a new trial. Appellant relies on *Whitmore v. State*, 570 S.W. 2d 889, 898 (Tex.Crim.App.1977) (op. on reh'g), in which the Court of Criminal Appeals held that "where an accused's constitutional rights are in conflict with a valid procedural rule of law, the procedural rule must yield to the superior constitutional right." In that case, the court found that the accused was entitled to a hearing on an untimely motion for new trial based on newly available evidence because he was denied his constitutional right to compulsory process when he attempted to obtain the testimony of his co-defendant, but was unable to do so when the co-defendant indicated that he would assert his fifth amendment privilege against self-incrimination.

■ However, the facts in *Whitmore* are distinguishable from the facts in the instant case. In this case, appellant made no attempt before or during trial, or upon a timely motion for new trial to procure Howell's testimony by requesting a bench warrant or subpoena, although his possible involvement was known to appellant at that time. Further, there is no showing that Howell personally asserted his fifth amendment privilege against self-incrimination, thus defeating appellant's constitutional right to compulsory process. The right to compulsory process for obtaining witnesses is not an absolute right. *United States v. Wilson*, 732 F.2d 404 (5th Cir.1984); *Weaver v. State*, 657 S.W.2d 148, 150 (Tex.Crim. App.1983). Moreover, appellant's trial counsel testified that he did not consider Howell a suspect in the case and that he

chose to try appellant's case based on his alibi defense.

The Court of Criminal Appeals in *Drew v. State*, 743 S.W.2d 207, (Tex.Crim.App. 1987), held that:

A defendant cannot normally complain that he was deprived of a constitutional right, such as compulsory process of witnesses, which he did not attempt to exercise and in fact waived, or assert it was blocked by the superior constitutional right of a codefendant, such as the privilege against self-incrimination which the codefendant never personally claimed.

At 225.

Under the facts in the instant case, appellant waived his constitutional right to compulsory process. Therefore, the application of rule 31 of the Texas Rules of Appellate Procedure did not deprive him of a right secured by the Constitution. The trial court did not have jurisdiction to grant appellant's motion for new trial.

Moreover, even if the trial court had jurisdiction, it did not abuse its discretion in denying the motion. Motions for new trial based on newly discovered or newly available evidence are not favored by the court and are viewed with great caution. *United States v. Vergara*, 714 F.2d 21, 22 (5th Cir.1983); *Drew v. State*, at 225.

The denial of a motion for new trial based on newly discovered or newly available evidence will not constitute an abuse of discretion unless the record shows:

1) that the evidence was unknown or unavailable to the movant before trial;

2) that the movant's failure to discover or obtain it was not due to want of diligence on his part;

3) that its materiality was such as would probably bring about a different result at another trial; and

4) that it was competent, not merely cumulative, corroborative, or impeaching. See *Boyett v. State*, 692 S.W.2d 512, 516 (Tex.Crim.App.1985); *Van Byrd v. State*, 605 S.W.2d 265 (Tex.Crim.App.1980); see also *Whitmore v. State*, 570 S.W.2d at 896.

■ First, appellant has not shown that the evidence was unknown or unavailable

before trial, or that his failure to discover or obtain it was not due to lack of diligence.

The record reveals that appellant's trial counsel had access to the State's file, which indicated that the police considered appellant, Howell, and Wilson as suspects in a series of robberies, and that neither Mr. nor Mrs. Brinkley were able to identify Howell from a lineup. Prior to trial, appellant's trial counsel did not inquire about Howell's possible involvement in the Brinkley robbery. Moreover, appellant's trial counsel testified that he did not consider Howell a suspect even after learning of the possible connection among the three men, and that he chose to try the case based on appellant's alibi defense.

Further, both Howell and appellant's trial counsel testified that appellant's investigator spoke with Howell about the Brinkley robbery before appellant's trial. As noted earlier, appellant made no attempt to call Howell as a witness at trial to compel him to testify or invoke his fifth amendment right on the record. Greater diligence on the part of appellant and his trial counsel could have resulted in the discovery and procurement of Howell's testimony.

Most importantly, appellant does not show that Howell's testimony was material in the sense that it is probably true and of such weight as to probably produce a different result at another trial. *Etter v. State,* 679 S.W.2d 511, 514 (Tex.Crim.App. 1984).

At the hearing, Howell testified to details of the robbery; however, he also made several key statements obviously inconsistent with the facts presented at trial. Mr. and Mrs. Brinkley were able to positively identify appellant at both the line-up and at trial, but did not identify Howell from the photo spread. Further, Howell was already serving sentences for the other robberies, and he waited until he made his "deal" with the State before coming forward with his admission.

Appellant has not shown that Howell's testimony was probably true and that it would probably produce a different result

at another trial. The trial court heard and saw the witnesses at both the trial and the hearing, and was in the best position to determine their credibility. The trial court has wide discretion in deciding whether or not to grant a new trial. Based on the record before us, the appellant has failed to show that the trial court abused its discretion in denying his motion for new trial. Appellant's fourth point of error is overruled.

In his fifth point of error, appellant contends that he was denied his constitutional right to due process when the State failed to disclose that at the time of Howell's arrest, stolen property belonging to the Brinkleys was recovered from the apartment that Howell shared with Wilson. Appellant claims that it was not until the hearing on the amended motion for new trial that he first learned of the information.

It is reversible error for the State to either actively suppress or inadvertently fail to disclose evidence that might exonerate or be of material value to the accused. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Quinones v. State,* 592 S.W.2d 933 (Tex.Crim.App.1980).

In determining whether reversible error has occurred, the appellate court must consider three factors: 1) the suppression of the evidence by the State after a request from the defense, 2) the evidence's favorable character for the defense, and 3) the materiality of the evidence. *Coe v. State,* 683 S.W.2d 431 (Tex.Crim.App.1984); *Crawford v. State,* 617 S.W.2d 925 (Tex. Crim.App.1980).

In *Quinones v. State,* 592 S.W.2d at 941, the Court of Criminal Appeals defined "materiality" under Texas law in the due process terms used by the Supreme Court in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The court held that:

[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitu-

tional sense ... In determining materiality, the omission must be evaluated in the context of the entire record, and constitutional error is committed only if the omitted evidence creates a reasonable doubt that did not otherwise exist.

In the instant case, appellant admits that no pre-trial motion for discovery was filed. Appellant made no general or specific request for the State's evidence. Moreover, the appellant's trial counsel admitted at the hearing on the motion for new trial that he had access to the State's complete file. As noted earlier, the offense report indicated that the State considered appellant, Howell, and Wilson as suspects in a series of robberies.

Further, the stolen property belonging to the Brinkleys was found in an apartment that Howell shared with Wilson, who was positively identified by the Brinkleys as one of the men who robbed them at gunpoint. Howell was not identified by either of them from the photo spread. There was no evidence that the stolen property was in Howell's exclusive possession within the apartment. Therefore, appellant has failed to show how it is exculpatory to him that stolen property was found in an apartment shared by one of the men positively identified as having committed the offense.

More importantly, even if the information was exculpatory to him, based on the context of the entire record, the omitted evidence would not have created a reasonable doubt about appellant's guilt that did not already exist. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.