IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00373-CV

 

National Carriers, Inc., 

and Charles Maxwell Lay,

                                                                                    Appellants

 v.

 

Ron Duensing, Individually 

and as Representative of the 

Estate of Ellen Esther Duensing,

                                                                                    Appellees

 

 

 



From the 170th District Court

McLennan County, Texas

Trial Court No. 2006-624-4

 



memorandum Opinion



 

Appellants have filed an “Agreed Motion to Dismiss
Appeal,” stating that they have entered into a settlement agreement with
Appellees and asking us to dismiss this appeal and to tax costs against Appellants
pursuant to the settlement.  See Tex.
R. App. P. 42.1(a)(2).  The motion to dismiss is granted, and the appeal
is dismissed.  In accordance with the agreement of the parties, costs are taxed
against Appellants.  See Tex. R.
App. P. 42.1(d).

PER CURIAM

 

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Justice Reyna

Appeal dismissed

Opinion delivered and
filed March 12, 2008

[CV06]








 






"font-weight: bold">                                                                                                    

           Appellant John Vincent Norton was convicted by a jury in the 54th District Court of
McLennan County on a single count of aggravated assault and the same jury assessed punishment
at five years of confinement in the Institutional Division of the Texas Department of Criminal
Justice. See Tex. Penal Code Ann. § 22.02(a)(2) (Vernon 1994). He brings a single point of
error on appeal—that he was denied at trial his Sixth Amendment right to the effective assistance
of counsel. See U.S. Const. amend VI. We affirm.
I. Procedural and Factual Background
          We will relate the facts in the light most favorable to the verdict. During the spring
semester of 1993, Norton and the victim both attended McLennan Community College in Waco
and had several classes in common. They met in one of these classes, Anatomy and Physiology
I, where they happened to sit next to each other. Throughout the course of the semester they
spoke on a number of occasions and developed something of a friendship. From their
conversations the victim learned that Norton was in possession of a previous student's notes in a
microbiology class that she was taking at the time but he was not. Norton allowed the victim to
borrow the notes and she used them throughout the spring semester until it ended around the
second week of May.
          On or about May 8 at approximately 8:00 in the morning Norton telephoned the victim and
asked if she would be able to bring the notes to his house sometime that day. She informed him
that she was going to attend an aerobics class early that morning but that she would be able to
bring him the notes afterwards, at around 10:30. Norton agreed with the proposed time and gave
her directions to his house.
          The victim drove to Norton's house as planned and, after her arrival, knocked on a door
to the house. Upon answering the door, Norton, after the victim gave him the notes, asked if she
would like to see his dog. The two walked through several rooms in the house to the porch where
the dog was located, examined the dog for a couple of minutes, and then re-entered the house.
          When they were back in the house, Norton started to walk down a hallway and the victim
followed, believing she should because she was his guest. After taking approximately six steps
in the hallway, Norton retrieved a small, black .380 calibre handgun that he had previously stuck
in the back of the swimsuit he was wearing.


 He took a step toward the victim, who then retreated
a step until her back was against the wall in the corner of the hallway. Norton, now brandishing
the handgun, placed the barrel of the gun against the victim's head and tried to kiss her. The
victim turned her head, causing Norton to kiss her ear. She asked him to put the gun away, and
he responded that he would if she would stop pushing him. The victim stopped pushing, but
Norton did not put the gun away. He then tried to kiss her again, but she ducked underneath his
arm. He grabbed her, ordered her to get into the bedroom, and then tried to force her inside. The
victim, resisting, lost her balance and fell backwards into the bedroom. She then ran back into
the hallway, but Norton, still holding the handgun, grabbed her by the waist, picked her up, and
tried to carry her into the bedroom. The victim continued to resist, this time by kicking him in
the groin area. Norton then put her back on the ground. She then yelled at him in criticism of
his malicious behavior, whereupon he apologized and asked her not to tell anyone. The last thing
Norton told the victim before she left was that he had had "his eye on her throughout the whole
semester."
II. Ineffective Assistance of Counsel
          The standard for evaluating a non-capital punishment phase ineffective assistance of
counsel claim is the reasonably effective assistance standard of Ex parte Duffy, 607 S.W.2d 507
(Tex. Crim. App. 1980). Ex parte Langley, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992). 
Therefore, the test for effectiveness of counsel in the punishment phase of a non-capital offense
is, considering the totality of the representation of the defendant, whether the applicant received
reasonably effective assistance of counsel, i.e. whether counsel was reasonably likely to render
effective assistance and whether counsel reasonably rendered effective assistance. Ex parte
Walker, 794 S.W.2d 36, 37 (Tex. Crim. App. 1990).
III. The Alleged Instances of Ineffective Assistance
          Norton has identified three different errors he alleges his trial court counsel made which
resulted in his receiving constitutionally deficient assistance. The first is counsel's failure to object
during the guilt-innocence stage of the trial when the State, in its cross-examination of Norton,
allegedly established the elements of an extraneous offense, namely, disorderly conduct by firing
a weapon in a public place; the second is the elicitation by defense counsel of testimony from
Norton at the punishment phase that he used to smoke marijuana; and the third is the elicitation
from Norton by his trial counsel at the punishment stage of a prior misdemeanor conviction for
theft.
a. The Extraneous Offense of Firing a Weapon in a Public Place
          Norton contends he received ineffective assistance of counsel when his trial attorney
allowed the State to elicit the following testimony from him which, according to Norton,
constituted the extraneous criminal offense of disorderly conduct by discharging a firearm in a
public place. See Tex. Penal Code Ann. § 42.01(a)(9) (Vernon 1994).
[State:] And you were cleaning guns that day?
 
[Norton:] That's true.
 
[State:] And you testified that you had shot your [.45 calibre] black powder weapon earlier
in the day?
 
[Norton:] It was about three days prior to that.
 
[State:] And you decided to clean the gun that morning?
 
[Norton:] Yes.
 
[State:] Why were you cleaning the .380 pistol?
 
[Norton:] My wife had fired it. She had gone with me to fire both weapons.
 
[State:] Where did ya'll go to shoot these weapons?
 
[Norton:] Outside of town at a friend['s] place.
 
[State:] What's his name?
 
[Norton:] It's not really his place. It's just by the river.
 
. . .
 
[State:] What is this friend's name?
 
[Norton:] Raymond Farr.
 
[State:] Raymond Farr. And was Raymond Farr with you?
 
[Norton:] No, he wasn't.
 
[State:] Did you go out there and shoot frequently at Raymond Farr's place?
 
[Norton:] No. Those guns had already [only?] been fired three or four times.
 
[State:] Did you ask Raymond Farr if you could go out there and shoot?
 
[Norton:] No. No. It's by his house, not on his property. It was by the river.
 
[State:] Okay. So you weren't shooting at a friend's house; you were shooting on public
land.
 
[Norton:] Yes.

          Under article 37.07, section 3(a), of the Code of Criminal Procedure, evidence of
extraneous offenses is admissible during the punishment stage if they are shown beyond a
reasonable doubt to have been committed by the defendant. Tex. Code Crim. Proc. Ann. art.
37.07, § 3(a) (Vernon Supp. 1996). While we do not hold that Norton's testimony necessarily
constituted an admission that he had committed the offense of disorderly conduct by discharging
a weapon in a public place, we do hold that, even if it did, such evidence would have been
admissible under article 37.07, section 3(a). Any objection by Norton's trial counsel to the State's
line of questioning in this regard would have been properly overruled. Cooper v. State, 707
S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (an attorney's failure to object
to admissible testimony is not ineffective assistance). Therefore, we must conclude that there is
no merit to Norton's contention that his trial counsel was deficient in failing to object to the State's
questions on the place where he had discharged the weapons.



b. The Admissions of Shoplifting and Marijuana Usage
          Norton next contends his counsel was ineffective in eliciting testimony from him the
following testimony:
[Counsel:] Do you have any problem not breaking the law?
 
[Norton:] I never had a problem not breaking the law, no. I don't have any problem with
not breaking the law.
 
[Counsel:] Do you have a traffic ticket?
 
[Norton:] No traffic tickets.
 
[Counsel:] Prior to this incident have you ever been in jail?
 
[Norton:] I was in jail once when I was a teenager.
 
[Counsel:] How old were you then?
 
[Norton:] 17.
 
[Counsel:] What were you picked up for?
 
[Norton:] I got drunk . . . during a Christmas party. I was heavily intoxicated, and we
went and shoplifted some wine.
 
[Counsel:] And what happened on that case?
 
[Norton:] I pled guilty and spent three days in jail.
 
[Counsel:] You never did just bond out?
 
[Norton:] No.
 
[Counsel:] They gave you credit for time served?
 
[Norton:] Yes, sir.
 
[Counsel:] Both these arrests and convictions were class C misdemeanors that didn't carry
jail time, and you didn't have a jury or lawyer or anything. You stayed in jail and got
credit for time served?
 
[Norton:] Yes, sir.
 
[Counsel:] Other than that incident, have you [ever] been convicted of anything other than
that?
 
[Norton:] No, sir.
 
[Counsel:] Including traffic tickets?
 
[Norton:] Nothing ever.
. . .
 
[Counsel:] Jack, are you asking this jury for probation?
 
[Norton:] Yes, I am.
 
[Counsel:] Why do you think you should have probation, or do you think you should
[have probation?]
 
[Norton:] Well, I lived my entire life pretty much treating others the way I wanted to be
treated. I am not a violent person. I can't remember the last time I was in a fight. I don't
steal.
 
[Counsel:] I'm sorry. What?
 
[Norton:] I am not a bad person. I've never been mean.
 
[Counsel:] If the court or the jury gave you an opportunity to serve out any sentence on
probation, would you do everything in your power to meet all of those elements?
 
[Norton:] Yes, I would.
 
[Counsel:] Would you have any problem with any of it?
 
[Norton:] No, no problem.
 
[Counsel:] One term of probation, you can't use alcohol or drugs. Are you a drinker?
 
[Norton:] Very, very, very light.
 
[Counsel:] Could you abstain totally during the time of probation?
 
[Norton:] Yes, I could.
 
[Counsel:] Could you abstain from the use of any kind of drugs?
 
[Norton:] Yes, sir.
 
[Counsel:] Are you a drugger?
 
[Norton:] No.
 
[Counsel:] Have you ever been a drugger?
 
[Norton:] I'm being honest. In my past I've smoked a little marijuana in my past. I quit
doing it when I decided to go into the military.
 
[Counsel:] You've been drug free how long?
 
[Norton:] A few years.
 
[Counsel:] You don't have any drug addiction, do you?
 
[Norton:] No.

          Norton argues that his trial counsel was ineffective for eliciting testimony from him (1) that
he used to smoke marijuana and (2) that he had been convicted when he was 17 for shoplifting a
bottle of wine when the State had not attempted to offer that conviction into evidence itself. We
cannot say that the effectiveness of Norton's trial counsel was necessarily deficient because he
elicited this testimony. A court must indulge a strong presumption that trial counsel's conduct
falls within the wide range of reasonable professional assistance; that is, the defendant, to
successfully argue an ineffective assistance of counsel point, must overcome the presumption that,
under the circumstances, the challenged action "might be considered sound trial strategy." 
Strickland v. Washington, 466 U.S. 668, 688-89, 104 S.Ct. 2052, 2065 (1984); Jenkins v. State,
870 S.W.2d 626, 629 (Tex. App.—Houston [1st Dist.] 1994, no pet.). An error in trial strategy
will be deemed inadequate representation only if counsel's actions are without any plausible basis. 
Ex Parte Burns, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980); Pinkson v. State, 744 S.W.2d
329, 333 (Tex. App.—Houston [1st Dist.] 1988, no pet.).
          The record reveals that Norton's trial counsel at the punishment stage was trying to
persuade the jury that Norton should receive a probated sentence. Not only did counsel put the
question squarely to Norton in the above testimony whether he thought he could fulfill the
conditions of probation, but counsel prior to trial filed an application for probation and in closing
argument expressly asked the jury not to sentence Norton to the penitentiary but to give him
probation.
          Counsel apparently employed a three-fold strategy to convince the jury of Norton's
worthiness and suitability for probation; first, that the jury could be assured Norton would not
assault anyone ever again because he had a track record of previously engaging in wrongful
behavior, i.e., smoking marijuana and shoplifting wine, but then later correcting himself; second,
that Norton was an honest person as evidenced by his ability to confess before the jury to having
previously engaged in wrongful behavior; and third, that Norton was generally a good person who
only needed some counseling to turn him around and that probation would afford him that needed
supervision.
          Norton asserts this strategy could not possibly be considered effective because counsel
should have known that these admissions would then be used by the State to impeach the testimony
of the three character witnesses, one of whom was his wife, who were about to testify on Norton's
behalf.
          Counsel's strategy may not have been the most prudent, but we cannot say it was "without
any plausible basis." Blevins v. State, 884 S.W.2d 219, 230 (Tex. App.—Beaumont 1994, no
pet.) (placing a defendant on the stand and questioning him about his past use of certain drugs to
demonstrate honesty and forthrightness to substantiate a plea for probation is a plausible trial
strategy). 
          Undoubtedly, Norton's testimony that he had previously smoked marijuana several years
earlier proved extremely damaging when his wife subsequently testified that she had seen him
smoke marijuana the night the before the punishment hearing and that Norton's marijuana was
currently stored in her car, which was parked at the time right outside the courthouse. We are
not, however, to judge the effectiveness of trial counsel with hindsight. Ex parte Kunkle, 852
S.W.2d 499, 505 (Tex. Crim. App.), cert. denied, — U.S. —, 114 S.Ct. 122 (1993). Nothing
in the record indicates that when counsel propounded the questions to Norton about his past
marijuana usage that he knew Norton had smoked it as recently as the night before the punishment
hearing. Therefore, we cannot say counsel was ineffective for eliciting testimony from Norton
that he had previously smoked marijuana. Neither can we say that counsel was ineffective for
questioning Norton about his shoplifting conviction regardless of the fact that the State did not
attempt to enter it into evidence. See id. (strategic choices made after a thorough investigation of
law and facts relevant to plausible options are virtually unchallengeable).                   Having
concluded that counsel was not ineffective in any of the three alleged instances of deficient
representation, we overrule Norton's sole point of error and affirm the judgment.


                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Justice Cummings, and
            Justice Vance
Affirmed
Opinion delivered and filed March 13, 1996
Do not publish