Opinion issued October 28, 2010 

 

 

 



 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00802-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



LUKE DWAYNE LATSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 230th District Court

 Harris County,
Texas

Trial Court Cause No. 1205837 

 

 



MEMORANDUM OPINION

          A
jury convicted Luke Dwayne Latson of aggravated robbery and, after Latson
pleaded true to the allegations in two enhancement paragraphs, assessed
punishment at sixty years’ confinement.  See Tex.
Penal Code Ann. § 29.03(a) (Vernon 2003).  On appeal, Latson contends that he received
ineffective assistance of counsel.  We
hold that Latson failed to meet his burden to demonstrate that he received
ineffective assistance of counsel and therefore affirm. 

Background

In February 2009, Rick Dacus, a Metro
bus driver and the complainant, was driving his evening route when a man, the
sole passenger on the bus, ordered him to stop. 
Dacus stopped the bus.  Before the
man exited through the doors, he turned, pointed a gun at Dacus and demanded: “Give
me your wallet.”  Dacus gave him his
wallet.  Finding it empty, the man
demanded Dacus’s watch.  The man took the
watch, threw the wallet down, and walked away from the bus.  In court, Dacus identified Latson as his
assailant.  

Several cameras installed on the bus
recorded the robbery.  Metro Police
Department Sergeant Lynn reviewed the video of the robbery.  He noticed that Dacus’s asssailant used a Q
Card, which is a prepaid card used to pay the bus fare.  By noting the time the robber used his Q Card
to board the bus, Sergent Lynn located the associated Q Card from Metro’s
treasury department and the records of its use. 
Sergeant Lynn ascertained that the robber frequently used the card at 5300
Coke Street.  With still photographs of
the man who committed the robbery, he visited the leasing office of Crème Manor
Apartments, located at 5300 Coke Street. 
He showed the photographs to an administrative assistant and a
maintenance man.  Both identified the man
in the photographs as a trespasser on the property, whom they had last seen in
the courtyard.   

Sergeant Lynn found Latson in the apartment
courtyard and arrested him.  Latson had a
.38 caliber pistol when Sergeant Lynn detained him.  At trial, Dacus testified that the gun looked
similar to the one used in the robbery.  Metro
Police officer Ken Kuhlman interviewed Dacus after the police arrested
Latson.  Dacus verified that Latson was
the man who had robbed him.  

Before jury selection on the day of
trial, Latson complained to the trial court about his counsel’s
representation.  Specifically, he
maintained that he had a witness whom he wanted counsel to call:

                   THE
COURT:  Any other witnesses that you
have, sir? 

                   THE
DEFENDANT:  Yes, I have witnesses.

                   THE
COURT:  Who are they?

                   THE DEFENDANT:  I have told her [trial counsel].  Yes, I                       have
told her.  

 

                   THE
COURT:  Well I think she just said that
you didn’t. 

                   THE DEFENDANT:  No, but at that time I didn’t have the                       addresses.

 

                   THE
COURT:  Okay. 

                   THE DEFENDANT:  I mean, I didn’t have the addresses or the                         name
          but I - - because I knew them by
a street name, but I got                            his
first name now.  His name is Chris, and
he stayed in the                           Coke
apartments.  That’s where I was during
that whole time. 

 

                   THE COURT:  You got a street name for somebody named                      Chris - - and - - no,
you’ve got his street name and you say his                     real
first name is Chris - - 

 

                   THE
DEFENDANT:  Yes, Chris.  First name is Chris. 

                   THE
COURT:  And he stays at a particular
apartment complex? 

                   THE
DEFENDANT:  Yes, Apartment 83. 

                   THE
COURT:  Have you given that to her yet?

                   THE DEFENDANT:  I told her. 
She said, Well I’m going to                              have to tell that to - -

 

                   THE COURT:  Okay. 
When did you find the name Chris?                       That’s
something that you haven’t told her yet?  


 

                   THE DEFENDANT:  I found that out about three or four days                          ago.

 

                   THE COURT:  So three days ago, but you haven’t relayed
that                         to her until
now, correct? 

 

                   THE
DEFENDANT: Yes. Yes, sir. 

                   THE COURT:  Okay. 
Well if she wants to attempt service on                            somebody, first name Chris, at that
address, she can do that.                             There’s
a process server that can go attempt service. 
You don’t                    have a
last name at all? 

 

                   THE DEFENDANT:  I don’t know his last name, but his first                            name is Chris.

 

                   THE
COURT:  You know who he lives with?

                   THE
DEFENDANT:  He lives with his wife.

                   THE
COURT:  You know her name?

                   THE DEFENDANT:  I can’t - - I can’t remember her name. 

 

          Later,
while the jury deliberated Latson’s punishment, trial counsel addressed
Latson’s complained-of missing witness. 

                   TRIAL COUNSEL:  I want to go on the record just to clear                      something
up.  Prior to the trial starting, Mr.
Latson had stated                         that
he had a witness that he gave me that morning. 
Is that                        correct,
Mr. Latson?  

 

                   THE
DEFENDANT:    Yes.

                   TRIAL COUNSEL:  And what was the name of the witness                     that you gave me?

 

                   THE
DEFENDANT:   Chris.

                   TRIAL COUNSEL:  And how long had you known that this                              witness was available?

 

                   THE DEFENDANT:  I have known he was available about                      three days before I come
notify you and the Court. 

 

                   TRIAL COUNSEL:  Okay. 
So the first time you notified me                              about this witness was the day of
trial?

 

                   THE
DEFENDANT:   The day of picking the jury.


                   TRIAL
COUNSEL:  That’s correct?

                   THE
DEFENDANT:   Yes. 

                   TRIAL COUNSEL:  That’s the first time you told me about                     this?

 

                   THE
DEFENDANT:  Yes.

                   TRIAL COUNSEL:  Now isn’t it true that when you and I                       started talking about this
witness - - that you have         known
that                              this witness
has lived in Apartment 83 of the Coke                                  apartments
since I began representing you, correct? 

 

                   THE
DEFENDANT:  Yes.

                   TRIAL COUNSEL:  Have you ever shared with me that you                              had a witness who lived in Apartment 83?

 

                   THE DEFENDANT:  No.  I
didn’t know the apartment number,              and
his - - I didn’t know his name because I knew him by his                        street name.   

 

                   TRIAL COUNSEL:  Didn’t you tell me, when you and I were                             discussing this witness, that you had known where he lived
the                          whole time
I’ve been representing you? 

 

                   THE DEFENDANT:  I knew him by going to his apartment,                              but I didn’t know
his number. 

 

                   TRIAL
COUNSEL:  So how did you find out his
number?

                   THE DEFENDANT:  I had talked to someone, and they knew                           his number.  And that’s how I got his - - got his real
name. 

 

                   TRIAL COUNSEL:  So at no time during the six or seven                        months that I’ve been
representing you have you ever told me                     that
this witness existed until the jury was walking down the                              hall; is that
correct?  

 

                   THE
DEFENDANT:  Yes. 

Discussion

          In
his only issue on appeal, Latson contends that he received ineffective
assistance of counsel because his counsel failed to request a continuance to
secure the presence of a witness.  

Standard of Review 

To prevail on a claim of ineffective assistance of
counsel, the defendant must show that (1) his counsel’s performance was
deficient and (2) a reasonable probability exists that, absent counsel’s
errors, the result of the proceeding would have been different.  Strickland v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). 
The first prong of Strickland requires the defendant
to show that counsel’s performance fell below an objective standard of
reasonableness.  Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Thus, the defendant must prove objectively, by
a preponderance of the evidence that his counsel’s representation fell below
professional standards.  Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002).  The second prong requires the
defendant to show a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been
different.  See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Thompson, 9 S.W.3d at 812. 
In reviewing counsel’s performance, we look to the totality of the
representation to determine the effectiveness of counsel, indulging a strong
presumption that the attorney’s performance falls within the wide range of
reasonable professional assistance or trial strategy.  Thompson,
9 S.W.3d at 813.  Furthermore, a claim of
ineffective assistance must be firmly supported in the record.  Id. (citing McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996)).  Where the
record does not offer an explanation for trial counsel’s actions, we presume
that counsel made all significant decisions in the exercise of reasonable
professional judgment.  Jackson v. State, 877 S.W.2d 768, 771 (Tex.
Crim. App. 1994); Broussard v. State,
68 S.W.3d 197, 199 (Tex. App.—Houston [1st Dist.] 2002,
pet. ref’d).

          When the claim of
ineffective assistance is based on counsel's failure to call witnesses, the
appellant must show that such witnesses were available to testify and that
appellant would have benefitted from their testimony. Ex parte White,
160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (citing King v. State, 649
S.W.2d 42, 44 (Tex. Crim. App. 1983)); see
Pinkston v. State, 744 S.W.2d 329, 332 (Tex. App.--Houston [1st Dist.]
1988, no pet.). 

Analysis

          Here,
even if trial counsel had secured a continuance, nothing in the record
indicates that Chris would have been available to testify and that his
testimony would have benefited Latson.  Latson
only knew Chris’s first name, where he lived and that he lived with his wife.  He did not show that Chris was available to
testify at his trial.  See Ex parte Ramirez, 280 S.W. 3d 848,
853 (Tex. Crim. App. 2004) (holding that trial counsel was not ineffective for
failing to call witness because, even if he had written statement from witness,
defendant did not establish that witness was available to testify at his
trial); see also Milburn v. State, 15 S.W.3d 267, 269–270 (Tex. App. —Houston [14th
Dist.] 2000, pet. ref’d) (holding that trial counsel’s failure to search out
and present any mitigating character evidence at defendant’s punishment stage
actually and substantially prejudiced defendant, where parties in case had
stipulated that twenty witnesses would have testified they were available to
testify at punishment phase and would have asked jury to consider minimum
punishment.) 

          The
record is also completely silent on what Chris’s testimony would have been.  Even if Chris was available to testify, Latson
has not shown that his trial counsel was ineffective.  See
Perez v. State, 310 S.W.3d 890, 895 (Tex. Crim. App. 2010) (finding that
uncalled alibi witness’s testimony would not have benefitted defendant because,
even according to witness’s affidavit, it was still possible that defendant
committed crime); Starz v. State, 309
S.W.3d 110, 119–120 (Tex. App.—Houston [1st Dist.] 2009, pet. ref’d) (finding
that counsel was not ineffective for failing to interview witness because,
although witness was available, record did not indicate what information he
possessed and whether it would be helpful to defendant).  Thus, Latson has not shown that his trial
counsel was constitutionally ineffective in her failure to request a
continuance to secure Chris’s presence at trial.

Conclusion

We hold that Latson failed to meet
his burden to demonstrate that he received ineffective assistance of counsel.  We therefore affirm the judgment of the trial
court.

 

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Keyes,
Higley, and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).