

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00481-CR

MELVIN LONNELL ALLEN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury found Appellant Melvin Lonnell Allen guilty of indecency with a child by contact. The trial court assessed Allen's punishment at confinement for life. In three points, Allen contends that he was denied effective assistance of counsel. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

Allen is Lisa's biological father. Lisa has two children, Brittany and Jason. Lisa took her children on a trip to see Allen at his home in Louisiana in 2009; prior to that, Lisa had not seen her father since she was seven or eight years old. Brittany was five and Jason was seven at the time. Shortly thereafter, Allen began visiting Lisa and her children at their Arlington apartment about every other weekend. He would help out with the children, taking them to the park and taking Jason to football practice. Occasionally, Allen was at the apartment with the children by himself.

Lisa's friend Andrew also spent a considerable amount of time with Lisa and her children during this time. One day, Allen told Andrew to be careful because Brittany was developing a crush on him. When Andrew told Lisa what Allen had said, Lisa became concerned. She asked Brittany if anyone had ever touched her inappropriately. Brittany told Lisa that Allen had touched her breasts over her clothing. Brittany got a doll, pointed to the breast area, and made a circular motion with her finger to show where and how he had touched her. Brittany said that Allen had touched her multiple times and that he had told her to keep it a secret or "something bad would happen."

---

[2]To protect the anonymity of the children in this case, we will use aliases to refer to some of the individuals named herein. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

Lisa immediately contacted CPS and the police after Brittany's outcry. The police referred Brittany to Alliance for Children, a child advocacy center in Arlington. Brittany spoke with Lindsey Dula, a forensic interviewer at Alliance for Children. Brittany told Dula that Allen had touched her on the nipple area of her breast once. Detective Donna Hubbard of the Arlington Police Department watched Brittany's interview with Dula from an adjoining room. After listening to the interview and conducting further investigation, Detective Hubbard got a warrant for Allen's arrest. Allen was taken into custody in Louisiana and extradited back to Texas.

The jury found Allen guilty of indecency with a child. At the punishment phase of trial, Allen pleaded true to two enhancement paragraphs alleging prior convictions from Louisiana for indecent behavior with a child and sexual battery. The State introduced in evidence Allen's written stipulation and the pen packets relating to the prior convictions. The trial court found the enhancement paragraphs true, assessed Allen's punishment at life imprisonment, and sentenced him accordingly.

### III. EFFECTIVE ASSISTANCE OF COUNSEL

In three points, Allen argues that he was denied effective assistance of counsel. Specifically, he complains of his trial counsel (1) allowing the jury to infer that Allen had prior convictions during Detective Hubbard's cross-examination; (2) failing to object to the State's improper closing argument; and

3

(3) failing to object to and stipulating to Allen's prior convictions during the punishment stage of trial.

## A. Standard of Review

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). In other words, for a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable

4

representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813. This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 813. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Salinas*, 163 S.W.3d at 740 (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)).

5

**B. Ineffectiveness Not Raised in Motion For New Trial**

Although Allen filed a motion for new trial, he did not raise ineffective assistance of counsel in his motion. No hearing was held on the motion, and it was overruled by operation of law. *See* Tex. R. App. P. 21.8(c). Consequently, any trial strategy that Allen's attorney may have had for his challenged actions is not contained in the record. Allen argues, however, that none of the alleged errors are "susceptible to 'trial strategy' analysis." We will address each of Allen's allegations of ineffectiveness.

**C. Presumption of Reasonable Assistance Not Overcome**

*1. Cross-Examination of Detective Hubbard*

In his first point, Allen argues that trial counsel's cross-examination of Detective Hubbard during the guilt-innocence phase of trial "opened the door" to evidence of Allen's prior Louisiana convictions and allowed the jury to infer that he had a criminal history. He points to the following exchange between trial counsel and Detective Hubbard:

Q. When was the last time you had to do anything about this case?

A. . . . . Well, back in November of 2011.

Q. Okay.

A. I did some more work.

Q. And what was that?

A. Contacting DeSoto Parish Sherriff's Office.

6

Q. I'm talking—I'm not talking about that process. I'm talking about the process concerning [Brittany] and every other thing about the case.

A. On June 2nd of 2011 I got my written statement from [Andrew].

Q. Okay. That was the last time you collected anything or had anything to do with this case?

A. Well, no. I did do something on November 23rd. I collected some more information.

Q. That's in respect of extraditing Melvin to Texas, right?

A. No.

Q. You collected additional information?

A. Yes.

Q. From where?

A. From the lieutenant at that sheriff's office.

Q. At where?

A. At the DeSoto Parish Sheriff's Office.

Q. Okay. If you'll limit what you're talking about to Texas. Okay?

A. Okay.

Allen argues that the jury could have inferred that Detective Hubbard was investigating Allen's criminal history in Louisiana because she specifically stated that she was not communicating with Louisiana law enforcement about his extradition. But nothing in Detective Hubbard's testimony demonstrated to the jury that Allen had prior convictions in Louisiana. Defense counsel asked

Detective Hubbard when she had last done anything *with this case*, and Detective Hubbard referenced collecting additional information in Louisiana. No other details about Detective Hubbard's dealings with the sheriff's office in Louisiana were presented to the jury; in fact, defense counsel then instructed the detective to limit her testimony to her investigation in Texas. Furthermore, no evidence of Allen's extraneous offenses was admitted during the guilt-innocence stage of trial. Because Allen has not met his burden to show by a preponderance of the evidence that his counsel's questioning of Detective Hubbard constituted deficient performance, we overrule Allen's first point. *See Menefield*, 363 S.W.3d at 592; *Hathorn v. State*, 848 S.W.2d 101, 119–20 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 932 (1993).

### 2. No Objection to the State's Closing Argument

In his second point, Allen argues that he was denied effective assistance when his trial counsel failed to object to the following closing argument by the State:

> What motive does anyone have from this? The man who came into [Lisa]'s life briefly is out again. She trusted her father. She thought they were finally going to have a relationship. And did she get burned. Because never in a million years did she think that's what her father would do to her daughter.

Allen argues that the jury could have easily inferred from this argument that Allen had previously been imprisoned and is "out" of prison. He argues that his counsel's failure to object, to request an instruction to disregard, or to request a mistrial was error. Prior to the above argument, the State summarized the

8

evidence of Lisa and Allen's relationship, stating that although Allen had not seen Lisa since she was young, three years before trial, "all of a sudden, Melvin Allen wants to be involved in Lisa's life."

Even assuming that the State was improperly referring to Allen getting "out" of jail, instead of getting out of Lisa's life, the decision to object to particular statements uttered during closing argument is frequently a matter of legitimate trial strategy. *See Kuhn v. State*, 393 S.W.3d 519, 539 (Tex. App.—Austin 2013, pet. ref'd). Evidence of counsel's strategy, if any, is crucial to determining whether he was ineffective for failing to object to such a statement. *Id.* (explaining that one reasonably sound strategic motivation for not objecting to the prosecutor's closing argument was the desire to avoid drawing additional attention to the prosecutor's opinion); *Evans v. State*, 60 S.W.3d 269, 273 (Tex. App.—Amarillo 2001, pet. ref'd) (citing *Hubbard v. State*, 770 S.W.2d 31, 45 (Tex. App.—Dallas 1989, pet. ref'd)). In the absence of any opportunity for trial counsel to explain his motives for not objecting to the State's closing argument, Allen has failed to overcome the strong presumption that his trial counsel provided reasonably professional assistance. *See Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. We overrule his second point.

### 3. Stipulation to Prior Convictions

In his third point, Allen argues that he was denied effective assistance during the punishment stage of trial when trial counsel failed to object to Allen's

prior convictions used to enhance punishment and stipulated to Allen's prior convictions.[3]

The record reflects that Allen and his attorney discussed whether Allen wanted to stipulate to the prior convictions or plead not true to them. Trial counsel questioned Allen on the record about his decision to stipulate and asked if Allen understood the effect of stipulating, and the trial court also explained to Allen his right to plead not true to the prior convictions and have the State prove them. Allen stated on the record, in response to both his trial counsel's and the trial court's questioning, that he wanted to plead true and stipulate to both of his prior convictions. The record is silent as to what advice trial counsel may have given Allen about pleading true to the prior convictions, whether Allen persisted in pleading true against his counsel's advice, and what trial counsel's strategy was. When the record does not reveal what advice was given by counsel, an appellate court "cannot presume that the decisions originated with the attorney and were not the result of acquiescence to the client's wishes." *Pinkston v. State*, 744 S.W.2d 329, 332 (Tex. App.—Houston [1st Dist.] 1988, no pet.).[4] In

---

[3]Allen specifically argues that trial counsel should have objected and not stipulated to his prior convictions primarily because, as Allen alleges, the pen packet introduced into evidence by the State as proof of one of the convictions shows a different date of the offense than stated in the written stipulation and fails to show that Allen waived his constitutional rights, "including his right to a jury trial and his right to confront and cross-examine his accusers."

[4]Additionally, regarding any failure of trial counsel to object to the pen packet introduced in evidence as proof of one of the prior convictions, Allen's plea of true relieved the State of proving the prior convictions for enhancement.

10

the absence of any opportunity for trial counsel to explain his strategy, Allen has failed to overcome the strong presumption that his trial counsel provided reasonably professional assistance. *See Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63; *see also Gentry v. State*, No. 06-11-00265-CR, 2012 WL 3023169, at *3 (Tex. App.—Texarkana July 25, 2012) (mem. op., not designated for publication) (presuming, when record silent, that counsel's advice concerning pleas of true to prior convictions used for jurisdictional enhancement was based on reasonable professional judgment), *pet. struck*, 2012 WL 5258490 (Tex. Crim. App. Oct. 24, 2012). We overrule Allen's third point.

## IV. CONCLUSION

Having overruled each of Allen's three points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 22, 2013

---

*See Wilson v. State*, 671 S.W.2d 524, 526 (Tex. Crim. App. 1984); *Ford v. State*, 243 S.W.3d 112, 117 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Any objection to the pen packets would have been futile. *See Hathorn*, 848 S.W.2d at 126 (explaining that counsel was not ineffective for not making futile objection).

11